**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:14-cv-00638-CMA-BNB**

ARKANSAS RIVER POWER AUTHORITY,

Plaintiff,

v.

BABCOCK & WILCOX POWER GENERATION GROUP, INC.

Defendant.

**MOTION TO QUASH DEFENDANT'S FED. R. CIV. P. 30(b)(6) NOTICE OF DEPOSITION AND FOR PROTECTIVE ORDER**

Pursuant to Rules 26(c)(1) and 30, Fed. R. Civ. P., Plaintiff Arkansas River Power Authority ("ARPA") respectfully submits this motion for Protective Order ("Motion") asking that the Court quash the January 9, 2015 Notice of F.R.C.P. 30(b)(6) Deposition of ARPA ("Notice") issued by Babcock & Wilcox Power Generation Group, Inc. ("B&W").  In support thereof, ARPA states as follows:

**CERTIFICATION PURSUANT TO D.C.Colo.LCivR. 7.1(A)**

Counsel for the parties have engaged in multiple communications concerning this matter, including by written correspondence dated January 16, 2015 and January 26, 2015, as well as by a telephone call between Mr. Johnson, counsel for ARPA, and Mr. Bell, counsel for B&W, on January 26, 2015.  Despite these reasonable, good faith attempts to confer regarding this matter, the parties have been unable to agree on a mutually acceptable resolution.

## INTRODUCTION

This action arises from a coal-fired boiler supplied by Defendant B&W for an electric generation project known as the Lamar Repowering Project (the "LRP") in Lamar, Colorado. ARPA's involvement with B&W, and the boiler B&W provided for the LRP, dates back to 2003. B&W's Notice seeks information on 29 topics with 43 separate subparts – over 70 discrete subjects in total. **Exhibit A**, B&W's Notice. While ARPA acknowledges the fact-intensive nature of this case, discovery must have its limits. Even under the broadest construction of the scope of discovery, B&W's Notice seeks information exceeding these already lenient bounds.

ARPA is filing this Motion because B&W's Notice is overly broad and duplicative of discovery already taken. B&W has already deposed ARPA's current and former general managers, the LRP's environmental compliance manager, and the LRP project manager regarding the subjects identified. The noticed deposition topics are also duplicative of written discovery responses. Further, the noticed topics would call for expert testimony or legal opinions, and would elicit attorney-client communications and attorney work product. The Court should therefore quash B&W's Notice.

## BACKGROUND

B&W's involvement in the LRP:  ARPA is a Colorado joint action agency formed in 1979 for the purpose of supplying wholesale electricity to its member municipalities in southeastern Colorado. In 2004, B&W submitted a bid to ARPA to supply a coal-fired boiler for a proposed 44-megawatt steam-electric generation facility known as the Lamar Repowering Project or "LRP." The boiler is a critical component of the facility, as it supplies the steam necessary to generate electricity. Based on certain representations by B&W, including a representation that its boiler could meet certain emissions limits without a costly selective non-

catalytic reduction ("SNCR") emissions control system, ARPA awarded the contract for the boiler to B&W.

B&W's contract included guarantees regarding air emissions from the boiler. The contract further included a warranty that the work supplied would comply with all laws and regulations existing as of the date of the contract. The emissions from the coal-fired boiler were limited by the federal Clean Air Act, as well as the requirements of a permit issued by the Colorado Department of Public Health and Environment ("CDPHE").

After B&W supplied the boiler to ARPA, but before it was first fired, B&W advised ARPA that it could not meet its emissions guarantees without an SNCR system, despite its previous representations. Even with the SNCR system, the boiler could not meet its emissions guarantees or permit requirements. Further modifications were made in 2011, which likewise failed to bring the boiler into compliance. B&W proposed further modifications in 2012, but refused to fund the installation of those modifications. ARPA could not afford to make further modifications to the boiler, and as a result the 2012 modifications were not installed.

Because the boiler provided by B&W continually failed to meet its emissions guarantees, ARPA incurred numerous fines from the CDPHE and the United States Environmental Protection Agency for violations of the Clean Air Act. In addition, ARPA was sued by an environmental group called "WildEarth Guardians," asserting violations of the federal Clean Air Act, costing ARPA hundreds of thousands of dollars to defend and settle.

Without a boiler capable of meeting its emissions requirements, ARPA has been deprived of the value of the Lamar Repowering Project. As a result, ARPA commenced this action in February 2014 seeking damages under a variety of legal theories.

Discovery to date: Both parties have engaged in extensive fact-discovery. B&W has issued three sets of written discovery, and has deposed six individuals in connection with this litigation, including Richard Rigel, ARPA General Manager and LRP Project Manager, Alice Jewell, interim ARPA general manager from October 2008-June 2009, and William Leung, ARPA general manager from July 2009 until June 2011. B&W has also deposed Virgil Cochran, ARPA's Environmental Compliance Manager, Rory O'Neill, the LRP Plant Supervisor employed by Lamar Light and Power, and Michael Friedman, an engineering consulting hired by ARPA to advise regarding B&W's proposed modifications to the boiler.

B&W's Notice: In its Notice, B&W has listed twenty-nine topics (two of which are now withdrawn), with forty-three separate subparts. Although depositions are required to be limited to seven hours, B&W requests that ARPA designate one or more representatives to testify for up to fourteen hours as those combined seventy topics and subparts. ARPA is a small entity, with only three full-time employees. The witnesses that ARPA would designate in response to this notice have already been deposed. Moreover, as discussed more fully below, this discovery is overly broad and duplicative of discovery already taken, and would impose a significant burden on ARPA. Therefore, ARPA seeks a protective order under Fed. R. Civ. P 26(c).

## ARGUMENT

While the scope of discovery permitted under Rule 26 is broad, it is not limitless. *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010). "[A]ll discovery is limited by Rule 26(b)(2), which protects against, *inter alia*, overly burdensome discovery requests, discovery of cumulative materials, and overly costly discovery requests." *Id.* Granting further protections, under Fed. R. Civ. P. 26(c), for good cause, a court may issue a protective order regarding discovery to "to protect a party or person from annoyance,

4

embarrassment, oppression, or undue burden or expense." *See* Fed. R. Civ. P. 26(c)(1). What constitutes "good cause" is a flexible standard, intended to adapt to the conflicting interests presented, and a trial court is vested with "substantial latitude" to fashion an appropriate protective order taking into consideration the particularities of the case. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984); *Landco Equity Partners, LLC v. City of Colorado Springs*, 259 F.R.D. 510, 512 (D. Colo. 2009).

While Rule 30(b)(6) requires organizations that are issued a notice or subpoena to designate one or more persons to testify on its behalf, the protections afforded by Rule 26 remain applicable. Fed. R. Civ. P. 30(b)(6); *see also* Fed. R. Civ. P. 26(b)(2) & 26(c)(1). Thus, Rule 30(b)(6) does not require a party to designate a witness for topics that are irrelevant, duplicative, require expert knowledge, seek attorney-client privileged information, or create an undue burden, annoyance, embarrassment or expense. Fed. R. Civ. P. 26; *see also Townsel v. Butler*, 2009 WL 663046, *3 (D. Colo. March 13, 2009) (irrelevant topics barred); *E.E.O.C. v. The Vail Corp.*, 2008 WL 5104811, *2 (D. Colo. Dec. 3, 2008) (limiting duplicative and overly broad deposition topics); *Dealer Computer Servs., Inc. v. Curry*, 2013 WL 4999520, *5 (S.D.N.Y. Feb. 7, 2013) (suggesting expert testimony inappropriate topic for 30(b)(6) deposition). A party receiving a Rule 30(b)(6) notice designating any such topics may request a protective order barring the discovering party from inquiring into the prohibited subject matter. *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135 (10th Cir. 2007).

**A. B&W's Notice of Deposition Is Overly Broad.**

A court "may issue protective orders when corporations are asked to respond to overly broad or unfocused Rule 30(b)(6) notices." *Brunet v. Quizno's Franchise Co, LLC*, 2008 WL 5378140, *3 (D. Colo. Dec. 23, 2008); *see also E.E.O.C. v. The Vail Corp.*, 2008 WL 5104811,

*2 (D. Colo. Dec. 3, 2008).  Courts recognize that "[a]n overly broad notice for a Rule 30(b)(6) deposition subjects the noticed party to an "impossible task."  *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000).

B&W's Notice contains, in total, seventy discrete topics and subparts for examination. On its face, the scope of this designation is overly broad, unduly burdensome and oppressive. The language used by B&W in its Notice is also overly broad.  For example, Topic 7, subpart (g) refers to "All matters relating to ARPA's permit applications and related communications with permitting authorities."  The request is in no way limited to the time period pertaining to this litigation nor is the scope appropriately narrowed to the LRP.  Further, on its face, the language "all matters" is overbroad. *See Sprint Commc'ns Co. v. Theglobe.com, Inc.* 236 F.R.D. 524, 528 (D. Kan 2006) (When issuing a 30(b)(6) notice of deposition, the party seeking discovery "must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute.").

**B.  B&W's Notice of Deposition is Duplicative of Prior Discovery.**

"Discovery which is duplicative . . . should not be permitted." *E.E.O.C. v. The Vail Corp.*, 2008 WL 5104811, *2 (D. Colo. Dec. 3, 2008)(citing Fed. R. Civ. P. 26(b)(2)(c)). Because depositions are inherently "time-consuming and inefficient," they ought to "be productive and not simply an excuse to seek information that is already known." *Tri–State Hosp. Supply Corp.*, 226 F.R.D. 118, 126 (D.D.C. 2005).  Furthermore, "[w]here the notice seeks information which could more easily be obtained from another source, the court may refuse to allow that topic to be the subject of a 30(b)(6) deposition." *Dongguk University v. Yale University*, 270 F.R.D. 70, 79 (D. Conn. 2010); *Cf. In re Independent Serv. Org. Antitrust Litigation*, 168 F.R.D. 651, 654 (D. Kan. 1996) (noting that organization receiving 30(b)(6)

notice is not required to have counsel "marshal all of its factual proof" for any given claim; noting inefficiencies of obtaining information via 30(b)(6) deposition where information could be secured from other sources).

B&W's Notice contains topics that have previously been raised and addressed in written discovery. For example, topic No. 28 requires an ARPA representative to testify regarding "any and all damages sustained or claimed by ARPA from B&W's supposed misrepresentations or omissions." However, Interrogatory No. 3, which ARPA responded to on July 29, 2014, required ARPA to "describe in detail all damages You contend were caused by B&W, including the full amount of damages You seek and the manner in which the amount was calculated." **Exhibit B**, Plaintiff's Answers to Defendant's First Set of Discovery Requests to Plaintiff. Similarly, topic 4 seeks information regarding the problems in the construction of the LRP, but Interrogatory No. 12, which ARPA responded to on July 29, 2014, a response that covered over six pages, sought information regarding any delays in completing the LRP, including mechanical failure, accidents, change in scope of the project, etc. **Ex. B**. The deposition topics are duplicative of the written interrogatories previously issued and responded to by ARPA.

Finally, a number of the noticed topics are more appropriately addressed by written interrogatory. For example, topic 8 concerns "ARPA's planned daily and monthly load (in MW) of the facility and the actual daily and monthly load for the facility for all times the facility operated." To respond to this question, ARPA's 30(b)(6) deponent would be required to retain years worth of monthly numbers that could more easily be presented in a written response. Similarly, topics 15 and 16 concern ARPA's operational costs of running the LRP and ARPA's actual cost of electricity, both historic and projected. As a practical matter, it would be exceedingly difficult for ARPA's 30(b)(6) deponent to retain such numerical information, as

7

B&W is seeking numerical values that spans decades. But more importantly, this information could easily be obtained by a written discovery request.

## C. B&W's Request for 14-Hours to Conduct Rule 30(b)(6) Deposition Evidences Overbroad Scope.

As a means of ensuring an appropriately narrowed and focused scope, a Rule 30(b)(6) deposition is limited to seven hours in one day. Fed. R. Civ. P. 30(d)(1); *see also The Vail Corp.*, 2008 WL 5104811, *2-*3 (limiting Rule 30(b)(6) deposition to no more than seven hours regardless of the number of designees and topics). Pursuant to the Advisory Committee Notes for Rule 30(b)(6), "[t]he party seeking a court order to extend the examination ... is expected to show good cause to justify such an order." *See* Fed. R. Civ. P. 30(d) Advisory Committee's Note (2000 Amendment).

B&W's Notice states that the depositions "will continue from day to day until completed." B&W has indicated that it will seek fourteen hours to conduct ARPA's Rule 30(b)(6) deposition, twice the length of time provided for by the Federal Rules of Civil Procedure. B&W's representation that it will require more than seven hours over the course of one day to perform the Rule 30(b)(6) deposition evidences its overly broad scope; but more importantly, there is no good cause for extending the presumptive seven-hour deposition limit. ARPA currently has three employees, including Richard Rigel, who is ARPA's General Manager, a bookkeeper and an office manager. As the General Manager, Mr. Rigel is the individual at ARPA with the most extensive knowledge of the topics set forth in B&W's Notice. However, B&W has already deposed Mr. Rigel on those topics for a full seven hours. To allow B&W to depose him again on the same topics is duplicative, unnecessarily costly, and attempts to circumvent the seven hour limit on depositions. If B&W is allowed to proceed with a 14-hour

Rule 30(b)(6) deposition, as its counsel has indicated B&W will seek from this Court, it will effectively have 21-hours to depose Mr. Rigel.

**D. B&W's Noticed Deposition Topics Call for Expert Testimony.**

In the context of a Rule 30(b)(6) deposition, a notice of deposition that lists topics calling for expert testimony is unduly burdensome and exceeds the scope of permissible discovery. *See Dealer Computer Servs., Inc. v. Curry*, 2013 WL 4999520, *5 (S.D.N.Y. Feb. 7, 2013) (acknowledging that deposition topics requiring expert testimony are inappropriate topic for 30(b)(6) deposition); *Dongguk University v. Yale University*, 270 F.R.D. 70, 79-80 (D. Conn. 2010) (quashing topic seeking expert testimony from 30(b)(6) witness where information could be elicited from expert directly and other sources).

Topic 4 in B&W's Notice refers to problems encountered in the design and construction of the LRP. It seeks information regarding the "cause and effect" of problems encountered in the design and construction of the LRP. This is a highly technical case involving advanced engineering, design, and modeling concepts. To that end, each party to this litigation has retained at least one expert and endorsed numerous non-retained technical experts. This "cause and effect" information, as well as technical explanations, such as the one contained in subpart (j) – "The reason it was necessary to extract steam from the B&W boiler for the deaerator and the effect of extraction on boiler performance, power production and emissions" – are properly discovered via expert depositions. To require ARPA to educate a corporate representative on all of the technicalities of boiler design and engineering, if not impossible, would certainly impose an undue burden where the information could be obtained by other means.

Likewise, other noticed topics would require expert testimony or legal analysis and opinion. For example, topic 7 calls for ARPA's understanding of the applicable state and federal

9

air quality emissions requirements for the LRP and why those requirements changed over time. Topic 14 again calls for expert testimony, inquiring as to the value ARPA could receive for selling or otherwise disposing the B&W boiler.[1]

Topic 22 subpart (a) inquires as to the "quality" of ForeRunner's services relating the LRP. As an initial matter, the term "quality" is vague, but the topic also seeks expert testimony. Forerunner was an engineering firm that was hired by ARPA because Forerunner had expertise that ARPA did not. To ask ARPA to opine on the "quality" of the engineering work performed by Forerunner calls for experience in the industry and expert knowledge in the engineering field that ARPA lacks. Likewise, topic 24 concerns the "qualifications" of certain employees to perform certain services relating to the "design" and "construction," among other issues, of the LRP. Again, these topics call for expert testimony.

Topics 19 and 21 seek the factual basis underlying the claims of two distinct entities, WildEarth Guardians and Trinidad, in their law suits against ARPA. Not only do these topics call for a legal analysis, but this information is properly ascertained from the third parties who made the claims. It is an untenable request to ask ARPA to prepare a representative to speak to the factual bases of claims it did not assert or in any way assist in crafting.

### E.  B&W's Noticed Deposition Topics Would Reveal Attorney-Client Communications.

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.

---

[1] ARPA previously hired Stuart B. Milner and Associates ("Stuart B. Milner") to provide an appraisal of the salvage value of equipment from the LRP. Stuart B. Milner created a professional appraisal report of the LRP's salvage value, dated March 2, 2014. This report was previously provided to B&W (*see* ARPA_BW0218725-ARPA_BW0218762). ARPA has also listed Stuart B. Millner as a non-retained expert witness. B&W should look directly to Stuart B. Millner should it have questions regarding the report, not an ARPA employee without expertise in appraising highly technical and specialized equipment.

R. Civ. P. 26(b)(1). The attorney-client privilege covers communications made by the client as well as the attorney and it "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1980). This protection continues to apply in a Rule 30(b)(6) deposition, and the party seeking discovery may not invade attorney-client communications. Likewise, attorney work-product is protected during a Rule 30(b)(6) deposition. *JPMorgan Chase Bank v. Liberty Mut. Ins. Co.,* 209 F.R.D. 361, 362 (S.D.N.Y. 2002) ("30(b)(6) depositions are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means"; denying request seeking "defendants' mental impressions, conclusions, opinions, and legal theory"); *SEC v. Morelli,* 143 F.R.D. 42, 47 (S.D.N.Y. 1992) (asserting that "the proposed Rule 30(b)(6) deposition constitutes an impermissible attempt by defendant to inquire into the mental processes and strategies of the SEC").

A number of the topics in the Rule 30(b)(6) notice involve attorney-client communications. For example, topic 3 concerns the "drafting" and "negotiations" of a contract between B&W and ARPA, and topics 19 and 21 involve litigation and disputes between ARPA and other entities, and the reasons why ARPA agreed to particular settlements in specific cases. Topics 26 and 27 explicitly request ARPA to set forth the evidence upon which it will rely to support its claim in this litigation, which goes to the heart of both attorney-client privileged communications and attorney work-product protections. *See In re Independent Serv. Org. Antitrust Litigation*, 168 F.R.D. 651, 654 (D. Kan. 1996) (noting that organization receiving 30(b)(6) notice is not required to have counsel "marshal all of its factual proof" for any given claim; noting privilege issues).

## CONCLUSION

For the foregoing reasons, ARPA respectfully requests the Court enter a protective order quashing Coral's January 9, 2015 Notice of F.R.C.P. 30(b)(6) Deposition of ARPA.

Respectfully submitted this 29th day of January, 2015.

By: *s/ Scott T. Rodgers*
Craig N. Johnson
Scott T. Rodgers
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, Colorado 80202
(303) 830-2400
(303) 830-1033 (fax)
Email: cjohnson@fwlaw.com
srodgers@fwlaw.com
ATTORNEYS FOR PLAINTIFF ARKANSAS RIVER

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 24th day of October, 2014, a true and correct copy of the foregoing **MOTION TO QUASH DEFENDANT'S FED. R. CIV. P. 30(b)(6) NOTICE OF DEPOSITION AND FOR PROTECTIVE ORDER** was served via electronic mail upon the following:

Thomas C. Bell
Benjamin B. Strawn
David Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, CO 80202
tom.bell@dgslaw.com
ann.lebeck@dgslaw.com

*s/ Lauren E. Styler*
Lauren E. Styler