**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-00638-CMA-NYW

ARKANSAS RIVER POWER AUTHORITY,

    Plaintiff,

v.

BABCOCK & WILCOX POWER GENERATION GROUP, INC.,

    Defendant.

---

**ORDER ON PLAINTIFF'S MOTION TO QUASH AND
DEFENDANT'S MOTION TO COMPEL**

---

Magistrate Judge Nina Y. Wang

This matter is before the court on Plaintiff Arkansas River Power Authority's ("ARPA") Motion to Quash Defendant's Fed. R. Civ. P. 30(b)(6) Notice of Deposition and for Protective Order ("ARPA's Motion to Quash") [#60, filed January 30, 2015] and the Motion to Compel Deposition Testimony and Production of Documents ("B&W's Motion to Compel") filed by Defendant Babcock & Wilcox Power Generation Group, Inc. ("B&W") [#87, filed April 15, 2015]. These matters were referred to this Magistrate Judge pursuant to the Order Referring Case dated May 13, 2014 [#19], the Reassignment of the action dated February 9, 2014 [#63], and memoranda dated February 2, 2015 [#61] and April 16, 2015 [#88]. This court has carefully considered the Motions and related briefing, the entire case file, the arguments offered by the Parties during the March 18, 2015 and May 27, 2015 Motions Hearings, as well as applicable case law. For the following reasons, ARPA's Motion to Quash is GRANTED IN PART,

and DENIED IN PART and B&W Motion to Compel is GRANTED IN PART, and DENIED IN PART.

## BACKGROUND AND PROCEDURAL HISTORY

A significant portion of the background and procedural history of this case was set forth in detail in the court's prior order [#94] and will not be repeated here. At the heart of these Motions are ARPA's claims that "ARPA has further incurred …defense and settlement costs from environmental litigation resulting from the boiler's failure to meet its emissions guarantees." [#80 at ¶ 1]. Specifically, ARPA asserts that:

> In June 2013, ARPA settled the pending lawsuit with WildEarth Guardians, which arose from B&W's failure to meet the flue gas emissions guarantees. Pursuant to that settlement, ARPA will be required to pay WildEarth Guardians $325,000 in attorneys' fees, and will be required to fund a "supplemental environmental project" to be determined at a cost of an additional $125,000. This is in addition to the over $265,000 ARPA paid in legal fees to defend that lawsuit. None of these costs would have been incurred but for B&W's failure to meet its [sic].

[#80 at ¶ 92]. ARPA claims "[d]amages for settlement and defense costs of environmental litigation resulting from B&W's failure to meet its emissions guarantees." [*Id.* at 37 ¶ e]. It also claims "[d]amages for the loss of use of ARPA's $170 million Lamar Repowering Project ["LRP"] due to the failure of the boiler supplied by B&W." [*Id.* at ¶ g]. Essentially, ARPA alleges that "[w]ithout a functioning boiler, the plant cannot generate electricity," and that B&W is liable for all the consequences arising from the boiler's inability to meet the emissions guarantees, including the shuttering of the LRP. ARPA, however, is not claiming damages related to either its lawsuit with the city of Trinidad, Colorado or with Forerunner, the firm that ARPA engaged to prepare feasibility studies for the LRP and to assist with the design and selection of contractors for the facility. [#95 at 7].

2

B&W served a Rule 30(b)(6) deposition notice on ARPA, seeking testimony from a corporate representative about a variety of topics, including issues related to ARPA's permit applications and related communications with permitting authorities; issues related to problems with the design and construction of the LRP; and the legal advice received by ARPA in conjunction with the settlement of the litigation with Wild Earth Guardians. [#60-1]. While ARPA sought to quash the Rule 30(b)(6) Notice altogether and limit the time period of any Rule 30(b)(6) deposition to one day of seven hours, ARPA subsequently stated during oral argument at the March 18 hearing that it did not have an objection to a more tailored Rule 30(b)(6) deposition, but it did not want to subject its witnesses, who had already testified in their individual capacities, to further testimony on topics that had already been covered in prior depositions. B&W argued, however, that it should be permitted to bind ARPA through a Rule 30(b)(6) deposition and avoid a circumstance in which ARPA could change its theory throughout the action because individuals, rather than the corporation, had provided key testimony (or had been unable to answer the question).

Based on the concerns raised during the motions hearing, the court directed the Parties to discuss which individuals could bind ARPA, what topics had been covered by previous testimony and which of that testimony is binding on ARPA, and whether ARPA would be bound by previous testimony of an individual stating he or she "does not know." [#77]. The court further instructed the Parties to indicate in their status report whether issues remain as to the two additional fact depositions B&W sought to take. *Id.*

On April 13, 2015, the Parties filed a Joint Status Report, indicating that they had agreed to narrow the scope of certain topics in the B&W Rule 30(b)(6) Notice, but

certain issues remained. Specifically, ARPA continued to object to topics 19, 21, and 22, based on the attorney-client and/or government deliberative process privileges. [#86 at 2]. In addition to objecting to providing information about the settlement of the Wild Earth Guardian lawsuit, ARPA also objected to providing information about a settlement it reached with Trinidad, Colorado and dismissal of claims against ForeRunner. [#80 at ¶ 17; #86 at 2]. B&W contends that any privilege that attaches to this information was waived by ARPA when it put at issue the amounts paid to settle various litigations and the legal advice it received in connection therewith. [#86 at 4]. The Parties further indicated that they had a continued dispute over the length of any Rule 30(b)(6) deposition or whether B&W would be permitted to take the deposition of one additional fact witness, John Krajewski. [#86 at 3].

Consistent with its representations reflected in the Joint Status Report, B&W filed a Motion to Compel Deposition Testimony and Production of Documents, seeking testimony and documents regarding disputes and settlements with third parties that ARPA had previously withheld based on privilege objections. [#87]. ARPA argued that the Motion to Compel should be denied because B&W failed to adequately meet and confer prior to the filing of the Motion and because the Motion is untimely. [#95]. ARPA also substantively opposes the Motion, arguing that it did not put the issue of advice of counsel in dispute because it did not rely upon advice of counsel to come to its settlements. [*Id.* at 2]. At the hearing on May 27, 2015, the Parties indicated that the only outstanding discovery matters in the case relate to whether B&W can discover information related to advice of counsel provided with respect to the settlements and/or resolutions it reached with Wild Earth Guardians, Trinidad, and ForeRunner; the length

4

of a Rule 30(b)(6) deposition of ARPA; and the deposition of Mr. Krajewski. The court addresses each of these issues below.

## ANALYSIS

**I.     Meet and Confer Obligations**

Before turning to the Parties' substantive arguments regarding the scope of permissible discovery, the court will first address ARPA's concern regarding B&W's efforts to meet and confer. ARPA argues:

> contrary to the representation its Certification Pursuant to D.C. Colo. L. Civ. R 7.1(a) [sic], counsel for Defendant failed to confer in good faith regarding their motion. There was no prior conferral or discussion of the sufficiency of ARPA's responses to Defendant's document requests, and counsel for ARPA was unaware of any specific issue with its document production until it received a copy of this motion. For this reason alone, the Motion should be denied.

[#95 at 2].

B&W disputed that its efforts to confer were deficient, pointing to the efforts of the Parties prior to the filing of ARPA's Motion to Quash, that continued upon court order, and that culminated with B&W sending ARPA a letter demanding supplementation of its discovery demands. [#99 at 11-12].

Rule 37(a)(1) of the Federal Rules of Civil Procedure require the movant to confer or attempt to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action. Fed. R. Civ. P. 37(a)(1). In addition, the Local Rules of this District require parties to meet and confer prior to the filing of any motion, except those motions filed in a case of an unrepresented prisoner, motions to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure, motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and motions to withdraw by counsel pursuant to D.C.COLO.LAttyR 5(b). D.C.COLO.LCivR

7.1(a). The Rule specifically directs the attorney for the moving party to "confer or make reasonable good faith efforts to confer with any opposing counsel or unrepresented party to resolve any disputed matter." *Id.* A violation of Local Rule 7.1(a) is an independent basis for denial of a motion. *See Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, Case No. 09-cv-00970-PAB-KMT, 2014 WL 4056578, at *2 (D. Colo. Aug. 14, 2014) (J. Brimmer).

To satisfy the requirements of Local Rule 7.1(a), and Rule 37 of the Federal Rules of Civil Procedure, "the parties must hold a conference, possibly through the exchange of correspondence but preferably through person-to-person telephone calls or face-to-face meetings, and must compare views and attempt to reach an agreement, including by compromise if appropriate." *See Hoelzel v. First Select Corp.,* 214 F.R.D. 634, 636 (D. Colo. 2003). Counsel must confer about the specifics of a forthcoming motion, and not simply rely upon months-old prior conferences regarding discovery deficiencies to satisfy this obligation.

While it is clear that B&W's long-standing position was that it was entitled to discover information related to the settlement agreements, it is not clear to the court that it told ARPA that it thought any applicable privileges were waived prior to the Motion to Quash. In its Opposition to the Motion to Quash, B&W uneq uivocally stated that it did not seek attorney-client communications. [#66 at 10]. Absent any evidence to the contrary, it seems unlikely that any efforts to meet and confer prior to the Motion to Quash were directed at the issue before the court now. At some point after the oral argument in March and before the Motion to Compel was filed, B&W determined that ARPA put its communications with counsel at issue based on its claim to be reimbursed

for all settlement costs. While the court is concerned whether the efforts made were sufficiently robust or transparent, the court finds for the purposes of the instant Motion to Compel that they were sufficient. Specifically, the court notes that the Joint Status Report, filed two days prior to B&W's Motion to Compel and signed by both Parties' counsel, states:

> The parties have NOT reached agreement as to certain topics in the revised notice. Specifically, ARPA maintains its objections to topics 19, 21 and 22 to the extent they seek testimony on subjects that are protected by the attorney-client and/or government deliberative process privileges. These topics seek testimony regarding ARPA's rationale for entering into settlement agreements of litigation with WildEarth Guardians and the City of Trinidad, as well as ARPA's assessment valuation and, ultimately, dismissal of claims against ForeRunner. B&W contends that ARPA has waived any applicable privilege by putting at issue the amounts paid to settle various litigations and the legal advice it received in connection therewith. Further, even if ARPA has not waived any applicable privileges, most of the information sought in topics 19, 21, and 22 is not privileged.

[#86 at 2]. At that point, ARPA was aware of the contours of B&W's argument, and its intent to file a motion to compel on April 15, 2015 to address the matter. [*Id.* at 1.]

In making this finding, the court reminds the Parties and their counsel that the meet and confer process has at least two objectives. The first is to define the scope of the actual dispute and engage in substantive efforts to resolve such dispute without court intervention, which may include compromising on the part of all parties. The second is to promote civility among the members of the bar. The court is aware that it may not be convenient, or pleasant, for counsel to engage in such discussions, but the Rules (both Federal and Local) require it and this court expects nothing less.[1]

---

[1] ARPA also argues that evidence of the Parties' meet and confer efforts should be stricken pursuant to Rule 408 of the Federal Rules of Evidence, and to the extent Defendant's Motion to Compel relies on such conferral statements, the Motion should be denied. [#95 at 15-17]. ARPA cites no authority for its proposition that statements

7

## II.     Timeliness

ARPA also argues that the Motion to Compel should be denied because it is untimely, based on the fact that B&W knew as of June 2014 that ARPA intended to claim privilege and yet waited ten months to move to compel. [#95 at 13-14]. B&W argues that it only learned the extent of ARPA's privilege objections during March and April 2015 conferrals.  In this case, the court finds no prejudice to ARPA with respect to the timing of B&W's Motion to Compel.  The trial in this matter has not yet been set and the Rule 30(b)(6) deposition of ARPA has not occurred.  Neither party can reasonably claim surprise that the settlements are a significant issue in this case, and ARPA points to nothing it would have changed had B&W alerted it earlier that it was seeking to pierce the claimed privileges.  *Cf. Green Country Food Market, Inc. v. Bottling Group, LLC*, 371 F.3d 1275, 1279 (10th Cir. 2004) (finding that "a plaintiff should not be prevented from pursuing a claim simply because of a failure to set forth in the complaint a theory on which the plaintiff could recover, provided that a late shift in the thrust of the case will not prejudice the other party in maintaining its defense.") Therefore, while the court agrees that B&W certainly could, and perhaps should, have identified and raised this

---

made during a meet and confer process pursuant to Rule 37 of the Federal Rules of Civil Procedure or D.C.COLO.LCivR 7.1(a) are statements of compromise negotiations as contemplated by that Rule. [*Id.*] *See also*, *Precision Fitness Equip., Inc. v. Nautilus, Inc.*, Case No. 08-cv-01228, 2009 WL 3698525, at *3 (D. Colo. Nov. 4, 2009) (J. Arguello) (distinguishing statements made in conference on its anticipated motion rather than compromise negotiations covered by Rule 408).  Even if such meet and confer discussions were considered compromise negotiations, Rule 408 is clear that it only forbids such evidence either to prove or disprove the validity or amount of the disputed claim or to impeach by a prior inconsistent statement or contradiction.  Fed. R. Evid. 408; *Broadcort Capital Corp. v. Summa Medical Corp.*, 972 F.2d 1183, 1194 (10th Cir. 1992) ("Rule 408 only bars admission of evidence relating to settlement discussions if that evidence is offered to prove 'liability for or invalidity of the claim or its amount.'")  Neither circumstance is presented by B&W's Motion to Compel, and this court respectfully declines to extend Rule 408 in the manner proposed by ARPA.

issue earlier, the court finds that the appropriate course of action is to decide this issue on substantive grounds.

## III.   Applicable Law

Now the court turns to the substantive question before it: what discovery is B&W permitted in light of ARPA's demand that B&W is liable for all the costs associated with its third party settlements related to the LRP? Rule 26(b)(1) of the Federal Rules of Civil Procedure permits:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1). Rule 26(b)(2)(C) provides that the court, on its own accord or upon motion of a party, must limit the frequency or extent of discovery if it determines that: (1) the discovery sought is unreasonably cumulative, duplicative, or can be obtained through another less burdensome or less expensive manner; (2) the party seeking discovery has had ample opportunity to take discovery in the action; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(C). Built into the Federal Rules governing discovery is the principle of proportionality. *Witt v. GC Servs. Ltd. Partnership*, --- F.R.D. ----, Case No. 13-cv-2834-RBJ-CBS, 2014 WL 6910500, at *5 (D. Colo. Dec. 9, 2014).

### A.     Invocation of Privileges

Generally, information protected by the attorney-client privilege or the work product doctrine is not discoverable.  As an initial matter, when a party withholds information otherwise discoverable based on privilege or the work product doctrine, "the party must expressly make the claim and describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).  In certain cases, a party may waive privileges by its conduct.

In this case, the Parties agree that the application of the attorney-client privilege is governed by Colorado law, because the underlying claims of this diversity case are based on Colorado state law.  Fed. R. Evid. 501; *see Lee v. State Farm Mut. Auto. Ins. Co.*, 249 F.R.D. 662, 680 (D. Colo. 2008).  The attorney-client privilege is codified at §13-90-107(b) of the Colorado Revised Statutes, which provides in pertinent part:

> An attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment...

Colo. Rev. Stat. § 13-90-107(b).  The law is clear that the attorney-client privilege inures to the benefit and protection of the client, to allow a client to gain counsel, advice or direction with respect to the client's rights and obligations confidentially.  *See Mountain States Tel. & Tel. Co. v. DiFede* ("*DiFede*"), 780 P.2d 533, 541 (Colo. 1989).  The work product doctrine is reflected in Rule 26(b)(3)(A), which generally protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for a

party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A).

Neither of these privileges is absolute; both the attorney-client privilege and the work product doctrine may be waived. A waiver may be express, *i.e.*, a party may affirmatively consent to disclosure of the information. Or waiver may be implied through conduct. The burden of proving waiver rests upon the party seeking to overcome the privilege. *DiFede*, 780 P.2d at 542. The Parties agree that waiver of privilege occurs when the party invoking the privilege places "in issue a confidential communication going to the claim or defense." *Id.* at 543. The Colorado Supreme Court found that an implied waiver of privilege is appropriate in the following instance:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*Id.* at 543-44. In addition, the Federal Rules provide that work product may be discovered if it is otherwise discoverable under Rule 26(b)(1) and the party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id.*

## IV.    Scope of Rule 30(b)(6) Deposition

### A.    Information Related to Litigation Settlements

On April 13, 2015, B&W submitted a revised Notice attached to the Parties' Joint Status Report. [See #86-1]. Despite the Parties' attempts to reach an agreement regarding the scope of the deposition, Topic Nos. 19, 21, and 22 remain at issue:

**Topic No. 19**

Litigation and disputes between ARPA and WildEarth Guardians and ARPA's understanding of the bases of WildEarth Guardian's claims and ARPA's defenses, including:

(a) The reasons ARPA agreed to the Consent Decree in Civil Action Nos. 1:09-CV-02974 and 1:11-CV-00742 (U.S. District Court for the District of Colorado) signed by ARPA on October 16, 2013, including any assumptions ARPA considered about the operating costs of the LRP, its ability to meet the requirements of its air permit, and the efficiency and output of the LRP.

(b) ARPA's understanding of the factual basis and causation for each of WildEarth Guardian's claims, and ARPA's defenses thereto.

(c) Who provided legal advice to ARPA concerning the litigation and, more specifically, concerning the terms of settlement in the Consent Decree.

**Topic No. 21**

Litigation and disputes between ARPA and the City of Trinidad, including ARPA's understanding of:

(a) The bases of the claims and defenses asserted by the parties in the lawsuits captioned (i) City of Trinidad v. Arkansas River Power Authority District Court, Las Animas County Case No. 2011CV30 ("Trinidad I") and (ii) Arkansas River Power Authority v. City of Trinidad, District Court, Prowers County, Case No. 2012CV44 ("Trinidad II").

(b) The reasons ARPA agreed to, and the terms of, the Stipulation and Order in Trinidad II, entered into on May 23, 2013, and approved by ARPA's Board on May 30, 2013.

(c) The reasons ARPA agreed to the "Settlement Agreement" and the "Agreement Regarding Lamar Repowering Project" between ARPA, Syncora Guarantee Inc. and the City of Trinidad, Colorado dated as of July 23, 2014 and July 25, 2014, respectively.

**Topic No. 22**

The relationship and dealings between ARPA and ForeRunner, including:

(a) The quality of ForeRunner's services relating to the LRP, including any complaints by ARPA, its members and others and any delays, extra

      costs, damages or other problems on the project attributed to ForeRunner.

(b) Assessment of the nature and dollar amount of claims ARPA had against ForeRunner.

(c) Efforts by ARPA to assess, estimate, assert and resolve claims against ForeRunner.

(d) Why ARPA dismissed the lawsuit that was filed against ForeRunner.

(e) Any consideration received by or promised to ARPA by ForeRunner related to ARPA's claims or resolution thereof.

(f) The relationship between an ARPA board members and employees with any persons affiliated with ForeRunner.

Based on the Joint Status Reports and the arguments of counsel at the May 27 hearing, the court's understanding is that ARPA objects to these Topics to the extent they seek testimony on subjects that are protected by the attorney-client and/or government deliberative process privileges, and therefore, this Order focuses on the issue of privilege alone.[2]  B&W argues that ARPA waived any applicable privilege by "putting at issue the amounts paid to settle various litigations and the legal advice it received in connection therewith," and that "most of the information" sought in topics 19, 21, and 22 is not privileged.  [#86 at 2].  Under B&W's theory, it is entitled to discover privileged communications about ARPA's settlements not only with Wild Earth Guardians, but also Trinidad, Colorado and Forerunner, because ARPA's attempt to recoup the entire cost of the LRP from B&W means that "[t]he money ARPA paid – and the money ARPA did not obtain – in settling those disputes impacts the total cost of the

---

[2] ARPA concedes in both its papers and at argument that B&W is permitted to inquire about the "business" reasons for the settlement.  [#95 at 22].  The court also anticipates that B&W may ask about Topics 19, 21, and 22, insofar as it does not seek privileged information including whether ARPA told any third parties about the "legal" reasons for settlement.

13

LRP that ARPA now seeks to recover from B&W, as does the amount of its legal bills arising from those suits." [*Id.* at 3-4].

ARPA argues it did not put its legal advice at issue, because it expressly did not rely upon advice of counsel as a reason for settlement. [#95 at 20]. ARPA also argues that B&W may not pierce the applicable privileges because it has not established that such information is "vital." [*Id.* at 21-22]. ARPA further argues that because it does not seek recovery of any fees expended on its lawsuits with Trinidad or Forerunner, it could not have impliedly waived its privileges associated with those cases. [*Id.* at 20]. B&W contends that such information is, in fact, vital because it goes to the heart of the settlements of third party lawsuits that ARPA is seeking to recoup (either directly or indirectly) from B&W through this lawsuit. [#99 at 9-10].

I find both Parties' arguments too sweeping. On one hand, ARPA cannot avoid an implied waiver of the attorney-client privilege simply by avoiding the use of the words "advice of counsel." *Cf. Frontier Refining*, 136 F.3d at 700 (rejecting the argument that an implied waiver of the attorney-client privilege can be avoided simply because the party did not rely upon advice of counsel as a defense). To hold otherwise would allow parties to elevate semantics over substance, contrary to the precepts of the principles that govern this court. *See, e.g.*, *American Family Mut. Ins. Co. v. DeWitt,* 216 P.3d 60, 67 (Colo. App. 2008) (no "magic words" are necessary to preserve an issue for appeal, but the objection must be sufficiently particular to call attention to the particular point of contention); *Hinds v. Sprint/United Management Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008) (no "magic words" are required to establish protected activity, but the employee

14

must convey to the employer that his concern is engaged in an unlawful discriminatory practice).

On the other hand, B&W is not entitled to pierce ARPA's privileges simply because the protected information may be relevant. The Tenth Circuit's decision in *Frontier Refining* makes clear that mere relevance is not the standard.  136 F.3d at 701. Rather, the information must also be vital, *i.e.* necessary and unobtainable from non-privileged sources. *Id.*; *DiFede*, 780 P.2d at 543-44.  B&W concedes that most of the information sought by Topics 19, 21, and 22 are not privileged.  B&W can discover (and has likely already discovered) from non-privileged information whether the loss of the LRP was "based on B&W's alleged breach, not other events such as the fact ARPA knew operation of the LRP would be uneconomic."  [#87 at 8].  ARPA concedes that B&W can inquire about the "business" reasons for the settlement, which may include whether the LRP would be ecomomically viable, even if brought on-line.  In addition, B&W can test ARPA's theory that the failed boiler was the sole cause of the demise of the LRP without invading privileged communications by exploring the number of design problems associated with the LRP identified in ARPA's discovery responses.  B&W's expert witnesses may also address other technical reasons why the LRP was not successful and how much monetary damages (if any) can be attributed to B&W.

Applying the *DiFede* test, I find that B&W cannot fully ascertain from discovery of non-privileged information whether the claimed attorney's fees for both Wild Earth Guardians ($325,000) and ARPA ($265,000) were reasonable without access to privileged information regarding settlement discussions and the reasons for the ultimate settlement in the Wild Earth Guardian cases. The reasonableness of both amounts of

attorneys' fees is intertwined with ARPA's litigation decisions over the course of settlement discussions. For example, if Wild Earth Guardians was willing to settle earlier for less but ARPA continued to litigate, B&W may – as it suggests – have an argument that ARPA failed to mitigate its damages both in terms of its own and Wild Earth Guardian's attorneys' fees.

Therefore, unless ARPA is willing to withdraw its claims in this action arising from attorneys' fees, the court finds that B&W may inquire about what advice ARPA's attorneys gave it regarding Topic 19(a) -- the reasons ARPA agreed to the Consent Decree in Civil Action Nos. 1:09-CV-02974 and 1:11-CV-00742 (U.S. District Court for the District of Colorado) signed by ARPA on October 16, 2013.[3] In addition, within fourteen days of this Order, ARPA is ORDERED to produce any documents currently withheld on the basis of attorney-client privilege and/or work product doctrine regarding settlement discussions and the reasons for settlement related to the Wild Earth Guardians litigations.

---

[3] I further find that the privileged reasons for settlement in the Trinidad and Forerunner cases are too attenuated to ARPA's damages demands to be deemed either at issue or vital to B&W's defense to justify a waiver of privilege. B&W can inquire about non-privileged matters within Topics 21 and 22, including any non-privileged information regarding the reasons for ARPA's settlements and/or dismissals with Trinidad and Forerunner, what claims, defenses, and counterclaims ARPA asserted in each of the actions, ARPA's understanding of the factual bases for such claims, defenses, and counterclaims, and settlement demands or offers made to Trinidad and Forerunner (third parties with whom ARPA can claim no privileged relationship), any consideration received by or promised to ARPA by Forerunner, and the relationship between ARPA and Forerunner. These issues appear reasonably calculated to lead to admissible evidence regarding whether B&W should bear the sole responsibility for the failure of the LRP, the reasonableness of any resolution with Trinidad and Forerunner, and any potential bias of witnesses.

### B. Time limit for Rule 30(b)(6) Deposition

The Parties also continue to disagree as to the amount of time that should be allotted for the deposition. Rule 30(d) states that "[u]nless stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours," but that additional time must be allowed consistent with Rule 26(b)(2) if needed "to fairly examine the deponent." Fed. R. Civ. P. 30(d)(1) (emphasis added). The party seeking a court order to extend the deposition must support the request with good cause. Fed. R. Civ. P. 30 Advisory Committee's Note re Subdivision (d) (2000 Amendment).

I find good cause exists for extending the presumptive seven-hour limit, in light of the court's ruling, the fact that the Amended Complaint now pleads eight claims, including one for fraud, spans more than twelve years, and has spawned significant document production. *Cf. Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.*, 206 F.R.D. 518, 522 (S.D. Fla. 2002) (allowing fourteen-hour examination of 30(b)(6) deponent where plaintiffs sought information regarding defendants' finances for previous seven years, to reference 10,000 pages produced in discovery, and testimony that they had been unable to elicit during the prior deposition of an individual). However, given ARPA's agreement to designate some prior testimony as Rule 30(b)(6) testimony [#86 at 2], the court will permit B&W to proceed with a ten (10) hour deposition, with the caveat that it is at ARPA's election whether that time must all be taken in a single day or can be split across two days.

### V. Additional Discovery and Related Deadlines

At the March 18, 2015 Hearing, I vacated the deadlines for completing discovery, filing dispositive motions, filing the Pretrial Order, and for the Final Pretrial Conference,

indicating that I would reset these deadlines after reading the Joint Status Report and determining what issues remained, if any, as to the Rule 30(b)(6) deposition and additional fact depositions. [#77]. B&W, through the Joint Status Report, requests leave to take the deposition of one additional fact witness, John Krajewski. [#86 at 3]. ARPA opposes this request and contends that no additional discovery is necessary. *Id.*

Originally, discovery was set to close in this matter on February 16, 2015. [#31]. The Parties then stipulated to an extension of deadlines, which did not include the extension of fact discovery. [#45]. B&W provides no explanation as to why it waited until February 10, 2015 to request the deposition of Mr. Krajewski, who was purportedly identified in ARPA's Initial Disclosures. [#86; #95-5 at 5 (draft status report)]. Nor did B&W ask that fact discovery be extended to include the deposition of Mr. Krajewski, but rather represented in the second Stipulated Joint Motion to Extend Deadlines that fact discovery would be extended only for the deposition of Kelvin Moore. [#65, filed on February 20, 2015]. As ARPA noted, the Local Rules of this Court requires fourteen days' prior notice for a deposition. D.C.COLO.LCivR 30.1. Given these circumstances, the court will not permit B&W to further extend fact discovery to include a deposition of Mr. Krajewski.

ARPA also seeks its fees and costs associated with the Motion to Compel, arguing that B&W's positions were not substantially justified. [#95 at 23-24]. The court respectfully disagrees, and declines to award costs or fees to ARPA for its defense of the Motion.

Finally, during the March 18 hearing, the court vacated the remaining deadlines in this case to facilitate the disposition of the pending discovery motions. In the Joint

18

Status Report, the Parties contemplated that expert discovery would be completed by June 12, 2015. Accordingly, IT IS ORDERED:

(1) Plaintiff's Motion to Quash Fed. R. Civ. P. 30(b)(6) Notice of Deposition and for Protective Order [#60] is DENIED IN PART, and GRANTED IN PART;

(2) Defendant's Motion to Compel Testimony and Production of Documents [#87] is DENIED IN PART, and GRANTED IN PART;

(3) Plaintiff is ORDERED to provide all documents previously withheld on the basis of privilege or work product doctrine related to settlement discussions and/or the reasons for settlement for the Wild Earth Guardians cases, or advise Defendant in writing that it is withdrawing any claim based on recovery of attorneys' fees associated with the Wild Earth Guardians settlement, no later than **July 13, 2015**;

(4) To the extent Plaintiff continues to pursue recovery of attorneys' fees associated with the Wild Earth Guardian settlement, Defendant may ask the Rule 30(b)(6) deponent about the legal advice received regarding the settlement discussions and the reasons for settlement;

(5) The Parties will complete the Rule 30(b)(6) deposition of ARPA, which will be limited to not more than two days of ten (10) hours total (at the election of ARPA), no later than **July 27, 2015**;

(6) Dispositive motions will be due on **August 24, 2015**; and

(7) The Final Pretrial Conference in this matter will be held **November 2, 2015 at 2:00 p.m.** in Courtroom C-204, 2d Floor, Byron G. Rogers United States Courthouse, 1929 Stout Street, Denver, Colorado.

DATED:  June 30, 2015

BY THE COURT:

s/ Nina Y. Wang
United States Magistrate Judge