**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-00638-CMA-NYW

ARKANSAS RIVER POWER AUTHORITY,

    Plaintiff,

v.

THE BABCOCK & WILCOX COMPANY, f/k/a BABCOCK & WILCOX POWER GENERATION GROUP, INC.,

    Defendant.

---

**ORDER ON THIRD PARTY SYNCORA'S MOTION FOR PROTECTIVE ORDER**

---

Magistrate Judge Nina Y. Wang

This matter is before the court on Non-Party Syncora Guarantee Inc.'s ("Syncora") Motion for Protective Order ("Syncora Motion for Protective Order") [#108][1] filed on July 21, 2015. This motion was referred to the undersigned Magistrate Judge pursuant to the Order of Reference dated May 13, 2014 [#19], the Reassignment dated February 9, 2015 [#63], and the Memorandum dated July 22, 2015 [#109]. Plaintiff Arkansas River Power Authority ("ARPA")[2] filed a Brief in Support of the Syncora Motion for Protective Order ("ARPA Brief") [#110] and Defendant The Babcock & Wilcox

---

[1] For consistency and ease of reference, the court cites to documents as filed on, and pages assigned by, the Court Electronic Filing System ("ECF"), unless otherwise noted. In this Order, the court also uses the convention of "ECF No." to refer to the filings in other related cases.

[2] ARPA is a political subdivision "formed in 1979 by the Colorado municipalities of Las Junta, Lamar, Las Animas, Trinidad and Walsenburg and the New Mexico city of Raton for the purpose of operating a wholesale electric utility to supply the electricity requirements of those communities." [#80 at ¶ 7].

Company ("B&W") filed a Response to the Syncora Motion for Protective Order and the ARPA Brief [#111]. This court held oral argument on September 9, 2015, and took the matter under advisement. Having now reviewed briefing, considered the applicable case law, and being fully advised of the premises, the court hereby DENIES the Syncora Motion for Protective Order.

## BACKGROUND AND PROCEDURAL HISTORY

In April 2005, ARPA entered into a contract with B&W for a coal-fired steam boiler to use in converting a natural-gas electric generation facility into one firing coal, known as the Lamar Repowering Project (the "LRP") in Lamar, Colorado. [#80 at ¶ 41]. The contract contemplated that ARPA would pay B&W over $20 million for the boiler. [*Id.* at ¶ 42]. ARPA contends that the boiler never met performance standards, and as a result, ARPA spent millions of dollars on modifications of the boiler that never worked. [*Id.* at ¶ 1]. ARPA further avers the failure of the B&W boiler to meet emissions standards resulted in fines and penalties paid to state and federal regulators and defense and settlement costs of litigation brought by environmental groups. [*Id.*] Ultimately, ARPA has been unable to operate the LRP as intended, and seeks to recover not only the cost of the boiler, but also the fines paid to government regulators, costs and fees associated with the litigation settlements,[3] and damages flowing from the inability to operate the LRP. [#80 at ¶ 95, 36-37].

Syncora is a financial guarantee insurer that insures, among other things, the

---

[3] In its order dated June 30, 2015, the court gave ARPA the option to protect its attorney-client communications regarding settlements in third party litigation if ARPA withdrew its prayer for relief associated with such settlements. [#101 at 16]. Nothing on the court docket suggests that such prayer for relief has been withdrawn, and therefore, this court includes it.

prompt payment of bonds issued by municipalities and other local governmental entities. [#108 at 2]. In 2006 and 2007, Syncora insured over $110 million of bonds issued by ARPA to pay for the LRP. [*Id.*] In 2011, Trinidad sued ARPA, seeking among other things, to terminate its membership in ARPA and a declaratory judgment voiding its obligation to purchase power from ARPA under a Power Supply Agreement, purportedly based on the failure of the LRP.  *See City of Trinidad, Colorado v. Arkansas River Power Authority*, Case No. 2011cv30 (Las Animas County, Colorado); [#108 at 2]. On May 21, 2013, Syncora filed a two-count complaint against Trinidad in this court ("Trinidad matter"), asserting breach of the Implied Covenant of Good Faith and Fair Dealing associated with the Power Supply Agreement between ARPA and Trinidad and Anticipatory Breach of Contract. *Syncora Guarantee Inc. v. City of Trinidad, Colorado*, Civil Action No. 13-cv-1332-REB-KMT (D. Colo. 2013), ECF. No. 1.

During the course of the Trinidad matter, Syncora retained Richard Gendreau, an engineer with expertise in coal-fired boilers, as a consulting expert. [#108 at 3]. On January 14, 2014, Mr. Gendreau attended a mediation meeting involving Syncora, Trinidad, ARPA, and B&W. [*Id.*] While Syncora, Trinidad, and ARPA settled the matter, no resolution with B&W was reached and ARPA commenced this action in February 2014. [#1]. ARPA subsequently retained and disclosed Mr. Gendreau as a testifying expert in this matter.

This latest dispute arises from the discoverability of Mr. Gendreau's opinions regarding whether further modifications to the boiler design proposed by B&W in 2012 ("2012 modifications") would have brought the B&W boiler into compliance with the environmental emissions requirements. [#108 at 3-4]. During his June 3 deposition,

3

counsel for B&W asked Mr. Gendreau whether he had formed opinions on the 2012 modifications. [#100 at 5; #100-4 at 97:13-98:2]. Mr. Gendreau's testimony suggests that he considered that question (or related issues) as part of his previous engagement with Syncora in the Trinidad matter, but was not willing to disclose information without a court order. [#100-4 at 98:6-100:2]. Counsel for B&W made clear on the record that "the questions [B&W] wanted answered is whether Mr. Gendreau has reached an opinion of whether the 2012 modifications, if implemented, would allow the boiler to meet its contractual guarantees. Further, [B&W] would like to know what that opinion is and what it is based on." [#110-4 at 99:17-22]. The instant Syncora Motion for Protective Order followed.

Syncora contends that Rule 26(b)(4)(D) of the Federal Rules of Civil Procedure prohibits B&W from asking Mr. Gendreau about opinions he developed for Syncora as a non-testifying expert in the Trinidad matter, because such opinions constitute Syncora work product. [#108 at 4-8]. ARPA supports Syncora's position, further arguing that ARPA did not ask Mr. Gendreau to opine, and Mr. Gendreau did not opine, about whether the 2012 modifications proposed by B&W would have brought the boiler into compliance.[4] [#110 at 3-4]. Due to Mr. Gendreau's role as a testifying expert in this matter, the court will first consider whether Mr. Gendreau is required to affirmatively disclose his opinions regarding the 2012 modifications, and then turn to whether such information is discoverable, even absent an affirmative duty to disclose.

---

[4] While ARPA originally contemplated that B&W would argue that information from Mr. Gendreau was discoverable because he was a "fact witness," [#110 at 2], B&W has made no such argument in its Response [#111] and the court does not address it in this Order.

**ANALYSIS**

**I.   Applicable Law**

   **A.   Rule 26(a)(2)(B)**

Mr. Gendreau is a testifying expert in this action, and therefore, in his expert report, Mr. Gendreau must disclose, *inter alia*, (1) a complete statement of all opinions he will express and the basis and reason for them; (2) the facts or data considered by the witness in forming them; and (3) any exhibits that will be used to summarize or support his expert opinions.  Fed. R. Civ. P. 26(a)(2)(B).[5]

   **B.   Rule 26(b)(4)(D)**

In the Trinidad matter, Mr. Gendreau acted as a consulting expert for Syncora, that is, as an expert retained "in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial."  Rule 26(b)(4)(D) provides that:

> Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial.

Fed. R. Civ. P. 26(b)(4)(D).  Two exceptions are identified within the Rule itself:  (1) as provided for in Rule 35(b), which requires the report of an examiner who is performing a mental or physical exam as required by litigation; and (2) on showing exceptional

---

[5] Rule 26(b)(4)(C) governs the communications between Mr. Gendreau and ARPA's counsel. Generally, under the Rule, communications between Mr. Gendreau and ARPA's counsel are not discoverable except: as they relate to the compensation of Mr. Gendreau for his expert study in this action or testimony; *to identify facts or data that the party's attorney provided* and that the expert considered in forming the opinions to be expressed; or to *identify assumptions that the party's attorney provided* and that the expert relief on in forming the opinions to be expressed.  Fed. R. Civ. P. 26(a)(4)(C) (emphasis added). B&W does not allege, nor could it, that Mr. Gendreau's opinions from the Trinidad matter fall within the exceptions to Rule 26(b)(4)(C) to warrant disclosure in this action.

circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means. *Id.*

The burden of establishing whether the Rule applies lies with Syncora. *See Johnson v. Gmeinder*, 191 F.R.D 638, 643 (D. Kan. 2000) (party invoking the protection of Rule 26(b)(4)(B)[6] has the burden of establishing that the Rule applies). If Mr. Gendreau's prior opinion is protected under the Rule, then the burden shifts to B&W to show exceptional circumstances warranting disclosure. *Martensen v. Koch*, 301 F.R.D. 562, 580 (D. Colo. 2014). A party seeking discovery from a non-testifying expert cannot rely on conclusory statements or leave it to the court to ascertain its substantial need. *Id.*

Neither exception fully addresses the precise issue presented by this instant matter, *i.e.*, whether an opinion held or rendered by a consulting expert in one matter is discoverable when that same individual becomes a testifying expert in a subsequent, separate matter involving different parties.

**II.   Is Mr. Gendreau Required to Affirmatively Disclose His Prior Opinions?**

As ARPA's testifying expert, Mr. Gendreau is required to affirmatively disclose (1) a complete statement of all opinions he will express and the basis and reason for them; (2) the facts or data considered by the witness in forming them; and (3) any exhibits that will be used to summarize or support his expert opinions. Fed. R. Civ. P. 26(a)(2)(B). B&W concedes that ARPA did not ask Mr. Gendreau to specifically opine about the

---

[6] Prior to the 2010 Amendments to the Federal Rules of Civil Procedure, Rule 26(b)(4)(D) was previously codified at Rule 26(b)(4)(B). The substance of the Rule did not change with the 2010 Amendments, and therefore, the court incorporates case law, and treatises, interpreting Rule 26(b)(4)(B) into this Order. *See e.g.,* 8A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE CIVIL § 3032 (3d ed. 2015).

efficacy of the proposed 2012 modifications to the boiler. [#111 at 3]. Nevertheless, B&W argues that Mr. Gendreau should be required to disclose affirmatively his prior opinion because his current testimony "involves the 2012 modifications in several ways." [*Id.*]. B&W argues that Mr. Gendreau put his opinion about the 2012 modifications at issue by opining in this case that: (1) it was unclear whether the 2012 modifications would bring the boiler into the required compliance [*id.*; #111-1 at 10-11]; (2) B&W was not diligent in exercising its best efforts to propose a solution that could remedy the boiler's failure to meet emissions standards; [#111 at 3; #111-1 at 10-11]; and (3) there are significant differences between the original boiler design and the proposed modifications. [#111 at 3; #111-1 at 12]. ARPA contends that because it does not ask for, and Mr. Gendreau does not render, an opinion regarding whether the proposed 2012 modifications will function to bring the boiler up to the required emission standards, any testimony about his prior work for Syncora is not discoverable. [#110 at 6-7]. ARPA further contends that Mr. Gendreau did not consider such opinion in rendering his opinions in this matter. [*Id.* at 4].

A review of excerpts of Mr. Gendreau's report provided by B&W [#111-1] reveals that ARPA and Mr. Gendreau studiously avoided the topic of his opinion regarding the proposed 2012 modifications. In response to Topic No. 4, Mr. Gendreau opines as to the timeliness and diligence exercised by B&W in addressing the boiler's failure to meet emissions guarantees, but does not address whether the 2012 modifications, once proposed, would have brought the boiler into compliance. [*Id.* at 10-11]. In doing so, he does not opine as to the efficacy of the proposed 2012 modifications; in fact, his opinions are ambivalent as to whether B&W's proposed 2012 modifications would

7

ultimately be successful.[7] Instead, his opinion with respect to Topic No. 4 is premised on B&W's lack of diligence, *i.e.*, by the time "ARPA began operating in the first half of 2011, there should have been sufficient data for B&W to determine what else might be necessary to absolutely correct the problem," but "B&W took a step-by-step approach to correcting the problems, rather than taking all steps that could have been taken to address the problems at the outset. [*Id.*]. Mr. Gendreau's opinion is that B&W's failing was one of timing, rather than of efficacy.

In response to Topic No. 5, Mr. Gendreau opines about whether there are fundamental differences between the boiler as originally designed, with the modifications made and proposed by B&W. [*Id.* at 12]. In doing so, Mr. Gendreau again fastidiously avoids taking any position with respect to the efficacy of the 2012 modifications, accepting that "even if the proposed modifications were successful in achieving the flue gas emissions guarantees," the modified boiler would be "dramatically different" than the originally proposed design. [*Id.* at 12]. None of the examples of the differences in design relate to flue gas emissions, but rather, focus on other features, such as power consumption, cost of maintenance, and reliability. [*Id.*]

Nor does this court agree with B&W's argument that Mr. Gendreau somehow incorporated his prior opinions into his current opinion by attaching a set of notes to his report that he took during a meeting with B&W. [#111 at 4]. The notes reflect information provided by B&W to meeting participants, including Mr. Gendreau, but do

---

[7] In fact, the very statement attributable to Mr. Gendreau that B&W takes issue with, *i.e.*, "it [is] not certain that these modifications would have brought the Project into compliance with it[s] operating permit," [#111 at 1], underscores the fact that Mr. Gendreau takes no position as to whether the proposed 2012 modification would actually work.

not reflect any opinions that Mr. Gendreau formed about the proposed modifications. [#111-1 at 14-15]. The presentation given by B&W barely contains any information about the LRP modifications at all, but instead provides overview information about the timeline of the project, the individuals involved, and a high-level outline of discussion points. [#111-1 at 17-21]. While Mr. Gendreau may have considered the same *facts and data* provided by B&W in reaching his opinions in both matters, there is no indication either in his report [#111-1] or in his deposition testimony [#111-2] that indicates that Mr. Gendreau specifically incorporated *his prior opinions* from the Trinidad matter into his expert opinions in this instant case. In addition, by attaching his notes and the B&W presentation, Mr. Gendreau has disclosed the facts and data gained from his consulting role that he considered as testifying expert in this matter.

Accordingly, the court concludes that Rule 26(a)(2)(B) did not require Mr. Gendreau to affirmatively disclose his opinions regarding the 2012 modifications formed during his previous work with Syncora on the Trinidad matter.

### III.     May B&W Otherwise Discover Mr. Gendreau's Prior Opinions?

The court now turns to the separate question of whether B&W can otherwise discover Mr. Gendreau's prior opinions from the Trinidad matter, even if Mr. Gendreau was not required to affirmatively disclose them as part of his expert report. Syncora argues that Mr. Gendreau's prior opinions regarding the 2012 modifications are "core work product protected from disclosure," that cannot be waived by either Mr. Gendreau or ARPA. [#108 at 4-8]. B&W argues that Rule 26(b)(4)(D) does not apply because Mr.

Gendreau was not a consulting expert for ARPA in this case, but rather was a consulting expert for non-party Syncora in a separate matter.[8] [#111 at 7-8].

The plain language of Rule 26(b)(4)(D) only refers to parties:

*Expert Employed Only for Trial Preparation.* Ordinarily, <u>a party</u> may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed <u>by another party</u> in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But <u>a party</u> may do so only:

(i) as provided in Rule 35(b); or

(ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

Fed. R. Civ. P. 26(b)(4)(D). It is undisputed that Syncora is a non-party to this litigation and that Mr. Gendreau has not been retained by any party to this litigation as a non-testifying expert.[9] Both Syncora and ARPA make clear that ARPA did not retain Mr. Gendreau until September 2014 and "had never engaged Mr. Gendreau to perform any services or render any opinions for ARPA prior to September 2014" – after he ceased being a consulting expert for Syncora in the Trinidad matter. [#108 at 3; #110 at 4].

---

[8] B&W's arguments that Mr. Gendreau has waived any protection from his prior opinions by the substance of his opinion in this matter [#111 at 6-8] are addressed above, and are not considered again in this section.

[9] As Syncora points out, courts in this District have recognized that the protections of Rule 26(b)(4)(D) can be applicable even when the protected material was developed before the litigation is commenced. *See Leprino Foods Co. v. DCI, Inc.*, Civil Action No. 13-cv-02430-RM-KMT, 2014 WL 2922667, *5 (D. Colo. June 27, 2014). In this case, however, there is no dispute that at the time of the Trinidad matter ARPA, Syncora, and B&W reasonably anticipated litigation involving all of them might ensue over the boiler; indeed, that can be the only reason that all of these entities engaged in the mediation session on January 14, 2014. [#108 at 3]. Therefore, *Leprino* does not address the issue central to this case, *i.e.*, can Syncora as a non-party invoke the protections of Rule 26(b)(4)(D) to prevent disclosure of Mr. Gendreau's opinions with respect to the 2012 modifications.

The relevant inquiry, therefore, is whether Syncora retains any residual protection in Mr. Gendreau's opinions that prohibits their disclosure in this matter, or whether any such protection is extinguished by virtue of Syncora's non-party status.

Both Parties cite the case of *Rocky Mountain Natural Gas Co. v. Cooper Indus., Inc.*, 166 F.R.D. 481 (D. Colo. 1996), which I find to be instructive, but not dispositive in this case. Syncora argues that Judge Nottingham recognized that a dismissed third party has standing to challenge and quash attempts to discover the opinions of its consulting experts. [#108 at 8]. But a closer reading of the case indicates that Judge Nottingham was contemplating that the dismissed defendant, Parker-Hannefin, would "be entitled to have the noticed depositions quashed and a protective order entered," <u>if it was still in the case</u>, not as a non-party. *Rocky Mountain Natural Gas Co.*, 166 F.R.D. at 483 ("Thus, if Parker–Hannifin were seeking to prevent defendant from deposing the experts regarding information and opinions they acquired while in Parker–Hannifin's employ, it would be entitled to have the noticed depositions quashed and a protective order entered. [citations omitted]. *Parker–Hannifin, however, is no longer a party to this case.*") (emphasis added). The court goes on to hold that "because Parker-Hannefin is no longer a party to the action, allowing defendant to depose the consultative experts does not implicate the policy concerns behind rule 26(b)(4)(B)." *Id.* The case does not address factors to consider or what outcome there would be if Parker-Hannefin, rather than Rocky Mountain Natural Gas, had brought a non-party motion to quash.

Some courts that have considered whether Rule 26(b)(4)(D) should be applied to a testifying expert's prior consulting work for a non-party agree with B&W's interpretation of Rule 26(b)(4)(D) – that the Rule only applies if the opinions were

11

developed for this particular action, and for a party involved in the case. *See Nidec Corp. v. Victor Co. of Japan*, Case No. C-05-0696 (EMC), 2007 WL 2349323, *1 (N.D. Cal. Aug. 14, 2007);[10] *Bio-Technology General Corp. v. Novo Nordisk A/S*, Case No. 02-235-SLR, 2003 WL 21057238, *1-*2 (D. Del. May 7, 2003); *Sullivan v. Sturm, Ruger & Co.*, 80 F.R.D. 489, 491 (D. Mont. 1978).[11]

Some courts have not limited Rule 26(b)(4)(D)'s reach to the same litigation. *See Religious Technology Ctr. v. F.A.C.T.Net, Inc.*, 945 F. Supp. 1470, 1480 (D. Colo. 1996); *Feist v. RCN Corp.*, Misc. Case Nos. 12-mc-80135 SI, 12-mc-80119, 12-mc-80121, 12-mc-80140, 2012 WL 541362, *3 (N.D. Cal. Nov. 6, 2012) (holding that Rule 26(b)(4)(D) does not limit the protection to facts known or opinions held regarding the litigation or trial at issue); *Employer's Reinsurance Corp. v. Clarendon Nat'l Ins. Co.*, 213 F.R.D. 422 (D. Kan. 2003); *Hermsdorfer v. American Motor Corp.*, 96 F.R.D. 13, 14-15 (W.D.N.Y. 1982).

The holding of these cases is consistent with the Tenth Circuit's interpretation of the purpose of the Rule, *i.e.*, "[t]he rule is designed to promote fairness by precluding unreasonable access to <u>an opposing party's</u> trial preparation." *Durflinger v. Artiles*, 727 F.2d 888, 891 (10th Cir. 1984) (emphasis added). And the weight of authority appears

---

[10] After inviting the non-party to address any concerns regarding confidentiality, the court nonetheless ordered production of the consulting expert's documents and deposition on the subject matter of his work in the prior litigation. *See* [ECF No. 774], Case No. 05-cv-00686-SBA (N.D. Cal. Aug. 28, 2007).

[11] Similarly, courts within and outside this Circuit have concluded that work product prepared for a non-party under Rule 26(b)(3) does not extend to a subsequent action not involving the non-party. *Hawkins v. South Plains Int'l Trucks, Inc.*, 139 F.R.D. 682, 684 (D. Colo. 1991); *Tambourine Comercio Internacional SA v. Solowsky*, 312 Fed. App'x 263, 286 (11th Cir. 2009); *Bozeman v. Chartis Cas. Co.*, Case No. 2:10-cv-102-FtM-36SPC, 2010 WL 4386826, * 2 (M.D. Fla. Oct. 29, 2010); *Burton v. R.J. Reynolds Tobacco Co.*, 200 F.R.D. 661, 676 (D. Kan. 2001).

to require, at a minimum, that the party who secured consulting expert's opinions remain a part of the instant litigation for the protections of Rule 26(b)(4)(D) to apply. *See Baldus v. Brennan*, Nos. 11-cv-562, 11-cv-1011, 2011 WL 6122542, *2 (E.D. Wisc. 2011).[12] Syncora has not cited, and the court has not found, any case in which a non-party has been permitted to invoke Rule 26(b)(4)(D) in a case where it was not a party. Therefore, I conclude that Rule 26(b)(4)(D) does not bar discovery of Mr. Gendreau's opinion regarding the 2012 modifications.

Rule 26(b)(1) governs the general scope of discovery, and provides that a party may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1). Neither Syncora nor ARPA argues that Mr. Gendreau's opinion of the 2012 modification is irrelevant to the claims or defenses raised in this case. And Syncora has also not identified any other basis to preclude discovery from Mr. Gendreau of his opinion regarding the 2012 modifications, such as prejudice, embarrassment, or concern over Syncora trade secrets. Syncora and ARPA do not assert that any common interest between them shields discovery, and ARPA makes no argument that revealing Mr. Gendreau's opinions regarding the 2012 modifications would somehow implicate ARPA's work product in this litigation. Indeed, both entities have made it very clear that their actions with respect to Mr. Gendreau and

---

[12] Syncora cites *Northern Natural Gas Co. v. Approximately 9117.53 Access in Pratt, Kingman, and Reno Counties, Kansas*, 2012 WL 1108547 (D. Kan. Mar. 31, 2012) to support its position. [#108 at 8]. The court in *Northern Natural Gas*, however, did not provide any express analysis of the application of Rule 26(b)(4)(D), and therefore, I cannot determine whether the reasoning would be apposite to the facts of this case.

the Trinidad matter were distinct. Finding no grounds to prohibit discovery of Mr. Gendreau's opinions regarding the 2012 modifications,[13] IT IS ORDERED:

(1)  Non-Party Syncora Guarantee Inc.'s Motion for Protective Order [#108] is DENIED;

(2)  ARPA will arrange for Mr. Gendreau to be deposed on the limited issues identified by B&W's counsel on the record, namely, "whether Mr. Gendreau has reached an opinion of whether the 2012 modifications, if implemented, would allow the boiler to meet its contractual guarantees; what that opinion is; and what it's based upon" no later than October 23, 2015;

(3)  Each party will bear its own costs and fees for the continued deposition;

(4)  Discovery remains closed for all other purposes; and

(5)  The Final Pretrial Conference remains set for November 2, 2015 at 2:00 p.m.

DATED: October 1, 2015

BY THE COURT:

s/ Nina Y. Wang
Nina Y. Wang
United States Magistrate Judge

---

[13] In so ruling, the court does not pass on the issue of whether any information related to Mr. Gendreau's opinion about the efficacy of the 2012 modification is admissible at trial.