**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-00638-CMA-NYW

ARKANSAS RIVER POWER AUTHORITY,

      Plaintiff,

v.

THE BABCOCK & WILCOX COMPANY, f/k/a BABCOCK & WILCOX POWER
GENERATION GROUP, INC.,

      Defendant.

---

## ORDER ON PRETRIAL MOTIONS

---

Magistrate Judge Nina Y. Wang

      This matter is before the court on six pretrial motions:

      (1)    Plaintiff's Motion to Strike Defendant's Disclosure of Non-Retained Experts ("Plaintiff's Motion to Strike Non-Retained Experts") [#122, filed September 4, 2015];

      (2)    Plaintiff's Motion to Compel Production of Design Standards ("Plaintiff's Motion to Compel") [#128, filed September 17, 2015];

      (3)    Defendant's Motion to Restrict Access to a Portion of Exhibit 1 in Support of ARPA's Motion to Compel Production of Design Standards [#151, filed October 21, 2015];

      (4)    Defendant's Motion to Restrict Access to a Portion of Defendant's Response to ARPA's Motion to Compel Production of Design Standards [#160, filed October 29, 2015] (collectively, "Defendant's Motions to Restrict");

(5)     Non-Party Syncora Guarantee Inc.'s Brief Pursuant to the Court's November 15, 2015 Courtroom Minutes/Minute Order ("Syncora's Second Motion for Protective Order") [#168, filed December 2, 2015]; and

(6)     Arkansas River Power Authority's Brief Pursuant to the Court's November 25, 2015 Courtroom Minutes/Minute Order ("ARPA's Motion for Protective Order") [#169, filed December 2, 2015].

These motions were referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A), the Order of Reference dated May 13, 2014 [#19], the Reassignment dated February 9, 2015 [#63], and the memoranda dated September 8, 2015 [#123], September 21, 2015 [#131], October 27, 2015 [#159], October 29, 2015 [#162], and January 5, 2016 [#179].   This court held oral argument on November 2, 2015 on Plaintiff's Motion to Strike Non-Retained Experts and Plaintiff's Motion to Compel, and took those motions under advisement at that time.   In addition, the court entertained argument with respect to Syncora's Second Motion for Protective Order and ARPA's Motion for Protective Order during an informal discovery conference held on November 25, 2015.   Furthermore, a number of these motions raise issues that have been previously considered by the court.   Having now reviewed completed briefing, considered the applicable case law, and being fully advised of the premises, the court hereby GRANTS IN PART and DENIES IN PART Plaintiff's Motion to Strike Non-Retained Experts [#122]; DENIES Plaintiff's Motion to Compel [#128]; DENIES Defendant's Motions to Restrict [#151 and #160]; DENIES Syncora's Second Motion for Protective Order [#168]; and DENIES ARPA's Motion for Protective Order [#169].

## BACKGROUND AND PROCEDURAL HISTORY

The factual background of this action has been recounted in prior court orders, and therefore, will not be repeated in detail here.  *See, e.g.*, [#134].  This action arises from an unsuccessful relationship between Plaintiff Arkansas River Power Authority ("Plaintiff" or "ARPA") and Defendant The Babcock & Wilcox Company ("Defendant" or "B&W") on a project known as the Lamar Repowering Project ("LRP"), which intended to convert a natural-gas electric generation facility into a coal-firing one. [#80 at ¶ 41]. Plaintiff contends that the boiler provided by B&W failed to work in a manner that allowed it to meet emission standards and consequently, the LRP became non-operational.  B&W has vigorously disputed that it is liable for the boiler's failure or that it is solely responsible for damages arising from the LRP's non-operational status.  The Parties have sought court intervention for a number of discovery disputes, and this latest set of motions involve technical information and experts who are expected to address such technical issues of both liability and damages at trial.

The Scheduling Order in this case, which has been amended several times to provide for extensions to deadlines, provided that information as required by Rule 26(a)(2) would be provided concurrently with the disclosure of the experts. [#31 at 15]. During the course of discovery, B&W identified the following individuals as "non-retained" experts:  Mikhail Maryamchik; John Bullock; Vijay Parekh; Tom Garabedian; Perry Brescilli; and Roger Kleisley, none of whom proffered an expert report pursuant to Rule 26(a)(2)(B).[1]  ARPA continues to seek, as it has done in the past, disclosure of

---

[1] B&W also originally identified Ron Shabaya, but withdrew its designation of him as a non-retained expert during the course of the briefing and argument associated with Plaintiff's Motion to Strike Non-Retained Experts.  *See* [#177 at 35].

additional design documents [#35].

## ANALYSIS

## I. Applicable Law

### A. Disclosures for Non-Retained Experts

Rule 26(a)(2) of the Federal Rules of Civil Procedure provides that a party must disclose to all other parties the identity of any person who may be used at trial to present evidence under Rule 702, 703, or 705 of the Federal Rules of Evidence, and governs whether an individual anticipated to give expert testimony is required to propound a written expert report or may provide an alternative disclosure. Fed. R. Civ. P. 26(a)(2)(A)-(C). A retained or specially employed expert must provide a report that contains:

> (1) a complete statement of all opinions the witness will express and the basis and reasons for them; (2) the facts or data considered by the witness in forming them (3) any exhibits that will be used to summarize or support them; (4) the witness's qualifications, including a list of all publications authored in the previous 10 years; and (5) a statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. P. 26(a)(2)(B). Pursuant to Fed. R. Civ. P. 26(a)(2)(C), expert witnesses not required to provide a written report by Fed. R. Civ. P. 26(a)(2)(a) must, absent contrary stipulation or court order, provide a disclosure stating the "subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705" and "a summary of the facts and opinions to which the witness is expected to testify.

Fed. R. Civ. P. 26(a)(2)(C)(i-ii).

This court has traditionally employed a burden-shifting procedure for determining whether the requirements of Rule 26(a)(2) have been met. *See Carbaugh v. Home Depot U.S.A., Inc.*, Civil Action No. 13-cv-02848-REB-MEH, 2014 WL 3543714, *2 (July 16, 2014). The party seeking to strike the witness bears the initial burden of showing that the disclosing party failed to comply with Rule 26(a)(2)(B). *Id.* Then the burden

shifts to the disclosing party to demonstrate that the witness was not required to provide a report as contemplated by Rule 26(a)(2)(B).   *Id.*   The substance of the testimony, rather than the status of the expert, will dictate whether a report under Rule 26(a)(2)(B) is required.   *Id.* at *3.

A violation of Rule 26(a)(2) is addressed by the court pursuant to Rule 37(c) of the Federal Rules of Civil Procedure.   Rule 37(c)(1) of the Federal Rules of Civil Procedure provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at hearing, or at a trial, unless the failure was substantially justified or is harmless.   In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(iv).

Fed. R. Civ. P. 37(c)(1).   The determination as to whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the court.   *Woodworker's Supply, Inc. v. Principal Mt. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).   In exercising its discretion, the court's consideration is guided by the following four factors: (1) the prejudice or surprise to the impacted party; (2) the ability to cure the prejudice; (3) the potential for trial disruption; and (4) the erring party's bad faith or willfulness.   *Id.*

### B.   Motions to Restrict

With respect to discovery materials filed in proceedings before this court, the Supreme Court acknowledged a common-law right of access to judicial records in *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978).   This right is premised upon

the recognition that public monitoring of the courts fosters important values such as respect for the legal system. *See In re Providence Journal Co.*, 293 F.3d 1, 9 (1st Cir. 2002). Judges have a responsibility to avoid secrecy in court proceedings because "secret court proceedings are anathema to a free society." *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996). There is a presumption that documents essential to the judicial process are to be available to the public, but access to them may be restricted when the public's right of access is outweighed by interests which favor nondisclosure. *See United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997).

Accordingly, documents filed with this District are presumptively available to the public, and the burden is on the party seeking restriction to justify such relief. D.C.COLO.LCivR 7.2(a). A showing of compelling reasons for restriction of public access is necessary, as it is critical that the public be able to review the factual basis of this court's decisions and evaluate the court's rationale so that it may be confident that the court is functioning as a neutral arbiter. *Cf. McVeigh*, 119 F.3d at 814.

Local Rule 7.2(c) is quite clear that a party seeking to restrict access must make a multi-part showing. It must: (1) identify the specific document for which restriction is sought; (2) identify the interest to be protected and the reasons why that interest outweighs the presumption of public access; (3) identify a clear injury that would result if access is not restricted; and (4) explain why alternatives to restricted access—such as redaction, summarization, stipulation, or partial restriction—are not adequate. D.C.COLO.LCivR 7.2(c)(1)–(4). As a result, a party seeking to restrict access may not simply point to confidentiality designations with respect to materials produced in discovery and/or state that it "believes" (without evidentiary support) certain materials

6

are competitively sensitive in an attempt to secure wholescale sealing of entire legal briefs and accompanying exhibits.   Whether a party has designated a document "confidential" or even "attorney's eyes only" is not dispositive, and may not even be helpful, to the court's analysis.   In addition, this court notes that the Tenth Circuit has specifically advised that "parties should not routinely or reflexively seek to seal materials upon which they predicate their arguments for relief..."   *See Lucero v. Sandia Corp.*, 495 F. App'x 903, 913 (10th Cir. 2012).

### C.    Motion to Compel

Discovery under the Federal Rules has long been governed by the principles of proportionality, *i.e.*, the balance of various factors such as the issues presented in the case, the amount in controversy, the parties' resources, the importance of the discovery in resolving the issues, and the burden and expense to the producing party.  Fed. R. Civ. P. 26(b)(2)(C) (former).   Indeed, these guideposts are so fundamental that the new amendments to the Federal Rules, effective on December 1, 2015, restored these factors back to Rule 26(b)(1), which defines the scope of discoverability.  Fed. R. Civ. P. 26(b)(1) (eff. Dec. 1, 2015); Advisory Comm. Notes to Fed. R. Civ. P. 26(b)(1) (2015).[2]

---

[2] The recent amendment to Federal Rule of Civil Procedure 26(b)(1), effective December 1, 2015, reads "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Pursuant to 28 U.S.C. § 2074(a) and the Order of the Supreme Court dated April 29, 2015, the amendment shall govern all civil cases commenced after December 1, 2015 and "insofar as just and practicable, all proceedings then pending."

"Restoring the proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties to consider proportionality, and does not place on the party seeking discovery the burden of addressing all proportionality considerations."  Advisory Comm. Notes to Fed. R. Civ. P. 26(b)(1) (2015).

Under this District's applicable case law, the parking seeking discovery has the burden of establishing that the information sought is relevant to a claim or defense in the case.  Once the discovery sought appears relevant, the party resisting the discovery has the burden to establish lack of relevance or that the information is of such marginal relevance that the potential harm occasioned by the discovery outweighs the benefit of production.  *See Simpson v. University of Colorado*, 220 F.R.D. 354, 359-59 (D. Colo. 2004).

### D.    Disclosures for Retained Expert Richard Gendreau

This court extensively discussed the applicable law relating to disclosures to be made by Plaintiff's expert, Richard Gendreau, in its October 1, 2015 Order denying Third Party Syncora's Motion for Protective Order.  [#134].  As discussed in that Order, Rule 26(b)(4)(D), which governs the discoverability of facts known or opinions held by an expert who has been retained in anticipation of litigation but who is not expected to be called as a witness at trial, did not apply to Mr. Gendreau's opinions rendered as a consulting expert in a prior lawsuit.  [#134 at 10-11 citing *Rocky Mountain Natural Gas Co. v. Cooper Indus., Inc.*, 166 F.R.D. 481 (D. Colo. 1996)].  Now Syncora seeks to

---

*See* http://www.supremecourt.gov/orders/courtorders/frcv15(update)_1823.pdf.    This court applies the principles of proportionality as discussed above, because they are the same principles that have applied to discovery throughout this case.

protect Mr. Gendreau's December 2013 draft document under the work product doctrine pursuant to Rule 26(b)(3) of the Federal Rules of Civil Procedure. [#168 at 4].

Rule 26(b)(3) of the Federal Rules of Civil Procedure governs the work product doctrine, even in those cases that arise under this court's diversity jurisdiction. *See Frontier Refining Inc. v. Gorman–Rupp Co., Inc.*, 136 F.3d 695, 702 n.10 (10th Cir.1998); *Wellinger Family Trust 1998 v. Hartford Life & Accident Ins. Co.*, No. 11-cv-2568-CMA-BNB, 2013 WL 2444714, *1 (D. Colo. Jan. 5, 2013). Under Rule 26(b)(3), the work product doctrine protects confidential materials prepared in anticipation of litigation or for trial. *See Weitzman v. Blazing Pedals, Inc.*, 151 F.R.D. 125, 126 (D. Colo. 1993); *L-3 Comm'ns Corp. v. Jaxon Eng'g & Maintenance, Inc.*, No. 10-cv-02868-MSK-KMT, 2015 WL 183303, *5 (D. Colo. 2014). Unlike the attorney-client privilege, however, work product immunity is not automatically waived by any disclosure to a third party. *In re Sealed Case*, 676 F.2d 793, 802-10 (D.D.C. 1982). The party seeking to invoke work product immunity bears the burden of establishing that it applies. *Barclaysamerican Corp. v. Kane*, 746 F.2d 653, 656 (10th Cir. 1984).

## II.   Plaintiff's Motion to Strike Non-Retained Experts

### A.   Information Acquired Outside of the Normal Course of Duty

ARPA seeks to strike B&W's non-retained experts on two separate grounds:  (1) the non-retained experts intend to testify about information acquired in anticipation of litigation, or otherwise outside of the normal course of duty [#122 at 4], and as result, B&W was required to propound a report for them; and (2) even if the non-retained experts intend to testify about information for which they have percipient knowledge, the disclosures themselves fail to be sufficiently specific under Rule 26(a)(2)(C). B&W

contends that because the witnesses are not specially-retained, there is no instance where they would be required to propound a report for them because they simply fall outside of the scope of Rule 26(a)(2)(B) [#143 at 5-6]; even under ARPA's reading of Rule 26(a)(2)(B), B&W need not propound reports because reaching opinions regarding the standard of care and whether B&W caused any of the problems at the LRP was "a core aspect of B&W's witnesses' jobs as they were the engineers responsible for designing and engineering the Boiler, and then attempting to address the issues ARPA raised" [*id.* at 7-8]; and the summaries provided by B&W in its disclosures are sufficient under the requirements pursuant to Rule 26(a)(2)(C) [*id.* at 8-9].

As to the first point, that Rule 26(a)(2)(B)'s report requirements turns only upon the categorization of expert as "specially retained" versus "non-retained," the court acknowledges the appeal of B&W's argument, but respectfully declines to adopt it.  The weight of authority in this District analyzes whether a report is required under Rule 26(a)(2)(B) based on the substance of the opinions to be offered, rather than the categorization of the expert.  *See Carbaugh v. Home Depot U.S.A., Inc.,* Civil Action No. 13-cv-02848-REB-MEH, 2014 WL 3543714, *2 (D. Colo. July 16, 2014) (M.J. Hegarty); *Kemp v. Webster*, Civil Action No. 09-cv-00295, 2012 WL 5289573, *2 (D. Colo. Oct. 26, 2012) (J. Jackson); *Davis v. GEO Group*, Civil Action No. 10-cv-02229, 2012 WL 882405, *2 (D. Colo. Mar. 15, 2012) (M.J. Tafoya); *Scholl v. Pateder*, Civil Action No. 09-cv-02959-PAB-KLM, 2011 WL 2473284, *3 (D. Colo. June 22, 2011) (M.J. Mix). *See also Trejo v. Franklin*, Civil Action No. 04-cv-02523-REB-MJW, 2007 WL 2221433, *2 (D. Colo. July 30, 2007) (finding under former Rule that the substance of the expert's testimony, not the status of the expert, will dictate whether a Rule 26(a)(2)(B) report will

be required) (J. Blackburn).   Indeed, this application comports with the purpose of expert disclosures to eliminate unfair surprise to the opposing counsel and provide the court with sufficient information to perform its gatekeeper role.

A review of the materials filed by both Parties in this action reveals the following undisputed facts: B&W agreed to design, engineer, and deliver a boiler in accordance to the requirements of their Contract [#177 at 13]; modification of the initial design was required [#56 at 1-2, #80 at 21-22]; B&W made three attempts to modify the boiler in an attempt to meet air emissions guarantees [#35 at 1-2]; and at least most, if not all, of the "non-retained experts" were integrally involved with the design, performance, and modification of the boiler in the course of their regular scope of work.   For instance, ARPA identified Thomas L. Garabedian in the Amended Complaint [#80 at 14-22], and also designates him as a will-call trial witness, and states that Mr. Garabedian will be called "to testify about all aspects of B&W's engineering, design and modification of the LRP boiler." [#173-1 at 1-2].   In addition, ARPA identifies Mikhail Maryamchik as a will-call witness "concerning all aspects of B&W's boiler design, the failure of the boiler to meet emissions guarantees, the SNCR system installed by B&W, and the modifications designed and engineered by B&W." [*Id.* at 2].   And while ARPA does not attribute any specific technical knowledge to Roger Kleisley, as ARPA's adverse witness regarding B&W's bid proposal for the LRP boiler and performance of the contract, Mr. Kleisley necessarily had technical knowledge or ARPA would be unable to contend that "B&W knew or should have known that its representations regarding the ability of its design to meet the enumerated emissions limitations were false at the time they were made." [#80 at ¶ 108].   ARPA further identifies John Bullock, Perry Brescilli, and Vijay Parekh

as engineers involved with the modifications to the boiler as contemplated by B&W [#173-1 at 4]; Perry Brescilli regarding the LRP's inability to meet emissions requirements [*id.* at 5], and Vijay Parekh regarding the tuning and testing for the LRP [*id.* at 10].  The court concludes that based on the record before it, it appears that these individuals would have been required to understand the standard of care, causation, and industry standards that applied to the boilers; otherwise, ARPA's claims that B&W knew or should have known its representations regarding the ability of its design to meet the enumerated emissions limitations were false at the time they were made would not be viable.  However, to the extent that B&W offers these witnesses to testify as to ultimate conclusions, *i.e.*, it was "reasonable" for B&W to act in a certain manner, such testimony appears to be outside of the scope of these individual's percipient knowledge and the execution of their professional, non-litigation, duties.  [#122-1].  This court is not persuaded that despite the fact that these individuals were charged, in the course of their professional duties, to design, engineer, and modify the boiler, those professional duties extended to drawing a final conclusion that such actions were "reasonable."  [#143 at 8].

Therefore, to extent that B&W intends or attempts to offer these witnesses to testify about any topic that was outside of their duties and information gained apart from the execution of their duties in designing, engineering, and/or modifying the LRP boiler (including knowledge gained in assisting counsel in preparing to defend this action), this court concludes that such testimony should not be permitted as these individuals have not disclosed an expert report.  Accordingly, this court denies ARPA's request to strike these individuals from providing expert witness testimony on the basis that they have

not propounded reports, but grants the motion to the extent that B&W seeks to offer expert testimony as to the ultimate issues, such as "reasonableness" of B&W's actions. To the extent that B&W can establish that it was within these individuals' non-litigation, professional duties to independently ascertain "reasonableness," or draw conclusions on other ultimate issues, B&W may raise such issues to the presiding judge, the Honorable Christine M. Arguello, at the appropriate time at trial, once an appropriate foundation has been laid for the proffer.

### B.   Sufficiency of Disclosures under Rule 26(a)(2)(C)

ARPA next seeks to strike Messrs. Maryamchik, Bullock, Parekh, Garabedian, Brescilli, and Kleisley because the disclosures fail to provide a summary of the facts and opinion as to which the witness is expected to testify.  [#122 at 10].  While the court agrees that a party cannot satisfy the requirement to produce a summary of facts and opinions by merely pointing at large bodies of information [#122 at 9-10], pursuant to this court's review of the B&W's Supplemental Disclosure of Non-Retained Experts [#122-1], Rebuttal Disclosure of Non-Retained Experts [#122-2], ARPA's disclosures of these individuals as will-call or may-call witnesses for the purposes of design engineering [#173-1], the court's knowledge of the Parties' extensive preparations for this case (including the motions for summary judgment and supporting exhibits), and the court's ruling limiting any expert testimony by these non-retained experts only to percipient knowledge and opinions arising from the performance of their normal, professional duties, this court concludes that, in light of the totality of the circumstances and in exercise of its sound discretion as guided by the case law, further disclosure under Rule 26(a)(2)(C) is neither warranted nor proportional.

Accordingly, this court **DENIES IN PART** Plaintiff's Motion to Strike Non-Retained Experts to the extent that it seeks to preclude any expert testimony from Mikhail Maryamchik, John Bullock, Vijay Parekh, Tom Garabedian, Perry Brescilli, and Roger Kleisley; but **GRANTS IN PART** to the extent that B&W offers these individuals to testify as to ultimate conclusions, such as reasonableness, that do not fall within the execution of their normal, non-litigation professional duties.

## III.    Plaintiff's Motion to Compel

In Plaintiff's Motion to Compel, ARPA renews its request to compel B&W to produce additional design standards associated with the LRP boiler. [#128]. In support of the motion, ARPA contends that its experts, Richard Gendreau and Craig Vogel, have reviewed the design standards produced to date, the deposition testimony of Mr. Maryamchik, and related discovery, and have concluded that there are other design standards that impact emissions that have not been produced. [*Id.* at 1-2]. ARPA's request for design standards arises from its Interrogatory No. 5, which requested:

> Describe in specific factual detail how B&W determined that the boiler described in its Bid Proposal would meet the flue gas emission guarantees set forth in Section 8 of the Bid Proposal, including all emissions modeling, testing, and comparable facility data considered by B&W in connection with the bid proposal.

[*Id.* at 2-3]. As this court previously noted, the Interrogatory is directed not at all standards that could potentially affect the emissions of the LRP boiler, but at all emissions modeling, testing, and comparable facility data *considered by B&W in connection with the bid proposal.* [#94 at 8]. Accordingly, ARPA needs to establish at least two prerequisites before a document can be responsive to this discovery request: (1) that B&W considered it; and (2) B&W considered it when it put together its bid

proposal, as opposed to any modification that occurred after it was determined that the boiler was not functioning as expected.   Contrary to ARPA's suggestion [#128 at 4-5; #161 at 1-2], the court did not compel production of a standard so long as ARPA could establish that there was "a clearly articulated nexus between the design standard requested, and resulting boiler emissions."   [*Id.* at 9].   Rather, Interrogatory No. 5 was limited in scope [#94 at 8].   To the extent that the court's order or the subsequent discussions during informal discovery conferences engendered confusion on the part of Plaintiff regarding the applicable standard, this court now clarifies its ruling.

Based on the consideration of the record before it, in particular the testimony of Mr. Maryamchik, this court finds that ARPA has not carried its burden of establishing that the additional documents sought are responsive to Interrogatory No. 5, as consistently interpreted by the court in this Order and in [#94].   Specifically, Mr. Maryamchik appears to be referring only to the "emissions prediction design standard" at the time the bid was submitted.   [#146-1 at 24:2-15].[3]   The court is further persuaded by the deposition testimony of both Mr. Gendreau and Mr. Vogel that they did not need additional information in order to render their respective opinions.   [#146-1 at 3].   Therefore, Plaintiff's Motion to Compel is **DENIED**.

## IV.   Motions to Restrict

The court next turns to the Motions to Restrict that were filed by B&W arising from the briefing of Plaintiff's Motion to Strike.   B&W seeks to restrict the unredacted version of Mr. Gendreau's declaration [#128-1], because it directly quotes from

---

[3] In citing deposition transcript, this court refers to the docket number as assigned by the court's Electronic Court Filing ("ECF") system, and the page and line numbers from the original transcript.

proprietary standards, and B&W proposes a redacted version of Mr. Gendreau's declaration be filed as part of the public record. [#151, #151-1]. ARPA objects to the restriction, stating that "[e]ssentially the same information has been published in B&W's book, *Steam, Its Generation and Use*, which is publicly available through Amazon." [#154 at 2]. In Reply, B&W does not address whether essentially the same information has been published through its book, but rather, takes issue with ARPA's disclosure of B&W's proprietary information to the public at large without prior permission of the court. [#155 at 2].

Over B&W's objection and at ARPA's urging, this court declined to amend the Protective Order in this matter to add a second, "attorney's eyes only" tier under which B&W could designate its design standards. [#94 at 31]. However, B&W designated the design standards produced as Bates-labeled HC-Babcock0000001-24 as CONFIDENTIAL under the Protective Order [#22], which provided that any request to restrict would comply with D.C.COLO.LCivR 7.2. [#22 at ¶ 8]. Even had the Parties agreed to redact the quotation from the design standards in Mr. Gendreau's declaration [#128-1], the court would still be required to independently determine whether the portion proposed to be redacted was appropriately restricted. *See Avantgarde Surgical, Inc. v. Rocky Mountain Hosp. & Med. Serv., Inc.*, Civil Action No. 08-cv-02103-MSK-CBA, 2008 WL 5335777, *3 (D. Colo. Dec. 18, 2008).

In comparing the portions of Mr. Gendreau's declaration [#128-1] to ARPA's submission [#154-1], it appears that the excerpts from the design standards do not reflect information that is not already in the public domain. B&W is but one entity addressing emissions from power plants, and there is no specificity regarding how B&W

weighs the various factors or calculates the emissions for its particular boilers.  While B&W's particular methodology for predicting or calculating emissions may be proprietary, the fact that certain variables scientifically affect emissions appears to be part of the public, scientific discourse regarding greenhouse emissions.  Based on the record before it, this court concludes that B&W has failed to carry its burden of establishing that the information as disclosed in Mr. Gendreau's declaration is entitled to restriction under D.C.COLO.LCivR 7.2, *Nixon v. Warner Communications*, or its progeny.  Therefore, this court **DENIES** B&W's Motion to Restrict.

As to Defendant's second Motion to Restrict [#160] that seeks to redact a portion of its Response to the Motion to Compel due to its discussion of the Emissions design standard [#146], the court finds that while B&W's discussion of its own design standards is more detailed than that of Mr. Gendreau's discussion, the same analysis as set forth above applies.  While variables affecting the NOx emissions are identified, B&W has failed to establish that the discussion as set forth in its Response to the Motion to Compel reveals any trade secrets or other proprietary information.  The variables themselves appear to be discussed in varying degrees through public sources like scientific journals. Accordingly, this court **DENIES** B&W's second Motion to Restrict.[4]

---

[4] In denying the Motions to Restrict, the court notes that the Protective Order does not set forth any additional procedure for the Parties to follow regarding documents designated under the Protective Order, other than compliance with Local Rule 7.2. [#22 at ¶ 8].  Therefore, out of an abundance of caution to avoid any unnecessary dispute between the Parties going forward, the court directs any Party filing documents that have been designated by either Party as CONFIDENTIAL under the Protective Order, to do so under restriction, either with an accompanying Motion to Restrict or permitting the other party to file an appropriate Motion to Restrict within the time period contemplated by Local Rule 7.2(e).  D.C.COLO.LCivR 7.2(e). The court notes, however, that the Tenth Circuit has advised parties not to simply reflexively file for restriction, particularly

In denying these Motions to Restrict, this court does not pass on the distinct issue of whether the design standards, as presented in their totality, should be restricted from public access.  That issue is not before the court, and the Parties may wish to separately raise any issue of the treatment of such design standards at trial to Judge Arguello.

## V.     Mr. Gendreau's December 2013 Draft Report

The final two motions, one filed by third-party Syncora and one filed by ARPA, seek to prevent the disclosure of a draft report created by Richard Gendreau, ARPA's testifying expert, in December 2013 and subsequently provided to counsel for ARPA after Mr. Gendreau's retention as a testifying expert in this matter. [#168, #169].  In so seeking, Syncora and ARPA rely on the attorney work product doctrine, as provided for under Rule 26(b)(3)(A) and (B) and the common interest doctrine, and Rule 26(b)(4)(B). [#168 at 4-5; #169 at 2].  Originally, Syncora sought, with ARPA's support, to preclude discovery on Mr. Gendreau's opinions that he rendered as a non-testifying consultant for Syncora in a separate case based on Rule 26(b)(4)(D) as "core work product" of a non-testifying expert.  [#108 at 4-5].  Syncora made the point that it, not ARPA, was the party with standing to protect its work product.  [*Id.* at 7].  Indeed, both Parties depicted their relationship as one at arms' length.  Syncora argued that there was "a bright line between Mr. Gendreau's two expert roles."  [#108 at 10].  ARPA insisted that "there is no evidence that Mr. Gendreau ever considered his work for Syncora in rendering opinions for ARPA," [#110 at 2], and Rick Rigel, ARPA's General Manager, attested that Mr. Gendreau never shared any of the opinions he developed for Syncora with ARPA.

when information forms the basis of a party's request for relief.  *See Lucero v. Sandia Corp.*, 495 F. App'x 903, 913 (10th Cir. 2012).

[*Id.* at 6]. This court concluded that due to Syncora's non-party status to this litigation, Rule 26(b)(4)(D) did not apply. [#134]. In doing so, this court observed that Syncora had not identified any other basis to preclude discovery from Mr. Gendreau's opinions regarding the 2012 modification. [*Id.* at 13-14]. The court expressly found "no grounds to prohibit discovery of Mr. Gendreau's opinions regarding the 2012 modification." [*Id.*] Neither Syncora nor ARPA objected to the court's Order pursuant to Rule 72(a).

Syncora and ARPA now identify different, albeit related, Rules to preclude discovery of Mr. Gendreau's December 2013 Draft. The court first considers ARPA's argument that B&W's discovery requests do not actually encompass Mr. Gendreau's December 2013 Draft. After reviewing B&W's discovery requests and ARPA's responses, this court respectfully disagrees. B&W specifically requested production of expert reports made in the matter of *Syncora Guarantee, Inc. v. City of Trinidad*, Civil Action No. 13-cv-1332 in the United States District Court for the District of Colorado. [#175-3 at 52-53]. The request is not limited to final expert reports. [*Id.*] In its objection, ARPA does not object to the Request on the basis it encompasses non-final drafts. Instead, ARPA objected that this Request, "to the extent it seeks information in the possession, custody or' control of third parties that are beyond Plaintiff's control, including information regarding the *Syncora Guarantee Inc.* lawsuit, to which Plaintiff is not a party." [*Id.* at 53]. ARPA's counsel contended at oral argument that ARPA did not have possession, custody and control of Mr. Gendreau's December 2013 Draft; only outside counsel did and outside counsel was not obligated under the discovery requests to produce the document. But the definitions of "You," and "ARPA" in B&W's discovery requests encompassed its attorneys [#169-5 at 2], and ARPA's objections to the

definition of "You," and "ARPA" [#175-3 at 4] or Request for Production No. 17 [*id.* at 52] did not exclude its attorneys.  Therefore, this court concludes that at least Request for Production No. 17 called for Mr. Gendreau's December 2013 Draft.

The remainder of Syncora's and ARPA's arguments, while not styled as such, are essentially, requests for reconsideration of the court's October 1 Order based on Rules and arguments that were not previously briefed.  A motion for reconsideration "falls within a court's plenary power to revisit and amend interlocutory orders as justice requires." *United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, No. 06–cv–00037-PAB-CBS, 2010 WL 420046, *3 (D. Colo. Feb. 1, 2010); see also Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").  Courts in this district have applied different standards on motions for reconsideration of non-final orders.  *See United Fire & Cas. Co.*, 2010 WL 420046, *3 (listing cases applying Rule 59(e) standard, Rule 60(b) standard, and "law of the case" standard).  Nonetheless, the prevailing approach demonstrates that courts consider whether new evidence or legal authority has emerged or whether the prior ruling was clearly in error.  *See James v. Dunbar*, No. 09–cv–02479-PAB, 2010 WL 3834335, at *1 (D. Colo. Sep. 27, 2010). None of the arguments forwarded by either Syncora or ARPA are based on new evidence or law that has emerged since the court's October 1 Order, and this court is disinclined to give the Parties an opportunity to re-litigate an issue that has already been decided when the proposed grounds could have been raised during the prior briefing.

In addition, though it need not pass on this issue in resolving the instant motions, the court briefly addresses Syncora's and ARPA's new argument that any shared document between them is protected from disclosure based on a common interest. First, the work product doctrine exists to protect a party's preparation for litigation. It is unclear how Mr. Gendreau's draft created in December 2013, before this action was initiated and before Mr. Gendreau was retained by ARPA, could reflect any work product of ARPA or its counsel in this litigation, as ARPA and its counsel has been repeatedly insistent that the two matters are separated by a "bright line." Second, to invoke a common interest privilege, parties must establish that they share a common *legal* interest. *See Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 705 (10th Cir. 1998). Despite Syncora and ARPA's agreement that they have agreed to proceed under a common interest, the court is not persuaded, based on the record before it, that there is a common *legal* interest, rather than a common *financial* interest. Syncora did not contract with B&W; it did not rely upon B&W's alleged misrepresentations to its detriment; and Syncora did not (and most likely, could not) sue B&W. ARPA was not a party to the action by Syncora against Trinidad. Syncora and ARPA's shared objective is "to maximize ARPA's recovery of damages," which is not a legal interest but a financial one, and should not be the basis for extending either the attorney-client privilege or work product immunity. *See Zepter v. Dragisic*, 237 F.R.D. 185, 190 (N.D. Ill. 2006) (rejecting a common interest based on a common financial interest in settling the case).

Accordingly, for the reasons set forth in this Order and in this court's October 1 Order, this court **DENIES** Syncora's Second Motion for Protective Order and ARPA's Motion for Protective Order.

## CONCLUSION

For the reasons set forth in this Order, **IT IS ORDERED** that:

(1)     Plaintiff's Motion to Strike Defendant's Disclosure of Non-Retained Experts [#122] is **GRANTED IN PART and DENIED IN PART**, and the testimony of B&W's non-retained experts will be limited consistent with this Order;

(2)     Plaintiff's Motion to Compel Production of Design Standards [#128] is **DENIED**;

(3)     Defendant's Motion to Restrict Access to a Portion of Exhibit 1 in Support of ARPA's Motion to Compel Production of Design Standards [#151] is **DENIED**;

(4)     The Clerk of the Court is **DIRECTED** to **UNRESTRICT** [#128-1];

(5)     Defendant's Motion to Restrict Access to a Portion of Defendant's Response to ARPA's Motion to Compel Production of Design Standards [#160] is **DENIED**;

(6)     The Clerk of the Court is **DIRECTED** to **UNRESTRICT** [#146]

(7)     Non-Party Syncora Guarantee Inc.'s Brief Pursuant to the Court's November 15, 2015 Courtroom Minutes/Minute Order [#168] is **DENIED**;

(8)     Arkansas River Power Authority's Brief Pursuant to the Court's November 25, 2015 Courtroom Minutes/Minute Order [#169] is **DENIED;**

(9)     Counsel for ARPA will **PRODUCE** a copy of Mr. Gendreau's December 2013 Draft Report to B&W no later than January 22, 2016; and

(10)   **No further discovery in this matter will be permitted**, including the further deposition of Richard Gendreau, without a showing of extraordinary circumstances.

DATED:  January 15, 2016                    BY THE COURT:

                                            s/ Nina Y. Wang
                                            Nina Y. Wang
                                            United States Magistrate Judge